## MUNDY v. MONROE.

An affidavit of publication of notice of sale of mortgaged premises in a statutory foreclosure, made between seven and eight years after the sale took place, is not presumptive evidence of the facts therein stated, under sec. 9 R. S. 1838, p. 501.

The act, Ses. L. 1843, p. 139, inhibiting actions of ejectment by mortgagees before foreclosure of the mortgage and the expiration of the time of redemption, is unconstitutional and void as to mortgages in existence at the time of its passage.

CASE reserved from Jackson Circuit Court. Ejectment for lots 3 4, 5, and a part of 6, in the village of Jackson, tried before the Hon. Warner Wing, in May, 1846. The facts are stated in the opinion of the court.

*Mundy*, in person.

*Frink*, for defendant.

*By the court*, MILES, J. The plaintiff held a mortgage for a portion of the purchase money, on a sale of the premises to one Paul B. Ring, under whom the defendant claims title.

On the trial, the plaintiff, to establish a statute foreclosure of this mortgage, offered in evidence an affidavit of the publication and posting up of a notice of sale, commencing in June, 1838, and continued for

Mundy *v.* Monroe.

twelve weeks. This affidavit was made and sworn to in May, 1846. Its reception as evidence was objected to by the defendant.

By the consent of the defendant, a verdict was taken for the plaintiff, subject to the opinion of this court upon the admissibility of this evidence, and upon other points raised on the trial, all of which have been certified to this court, but none of which except the above, and one which we shall hereafter notice, are necessary to be considered.

First, as to the admissibility of the affidavit as evidence of the publication and posting of the notice.

The statute in force at the time of the sale, R. S. 1838, p. 500, sec. 8, provides that any party desirous of perpetuating the evidence of any sale made in pursuance of the provisions of that chapter, may procure affidavits of the publication of the notice, to be made by the printer of the newspaper in which the same is published, or by any other person having knowledge thereof, and of the posting of the notice to be made by the person who affixed the same on the outward door of the court house, and an affidavit stating the circumstances of the sale of the premises, to be made by the person who acted as auctioneer at the sale.

These affidavits are, by the 9th section of the act, required to be recorded in the book of mortgages, in the registry of deeds in the county where the mortgaged premises are situated; and the original affidavits " so recorded," or the record, or certified copies, are made presumptive evidence of the facts therein contained.

The statute introduces a new rule of evidence. It is an extension of the general act authorizing a party to perpetuate the testimony of his witnesses. R. S. 1838, p. 435, sec. 31. The 35th section of the last mentioned act allows the deposition to be used only in case " the personal attendance of such witness cannot be had within process of the court."

Although the statute allows these recorded affidavits to be presumptive evidence of the facts contained in them, it cannot be construed to exclude other evidence of the same facts. The object of the law undoubtedly is, while the facts are fresh in the recollection of the witnesses, to preserve a perpetual remembrance of the thing, thus avoiding the danger of loss of the evidence from defects of memory on the one hand, and of perjury on the other, at a subsequent period, when litigation in reference to the subject matter may make such evidence important.

These affidavits may not be necessary at the time of the sale, or perhaps not until the time of redemption, if any, has expired. But when the purchaser has ascertained that he has acquired a title, he should at once take the necessary steps under the statute to preserve the evidence of that title.

It is true the statute does not prescribe any time within which this is to be accomplished, neither do we: it is sufficient that this court see that the statute receives such a construction as that it shall not be the means of oppression, fraud or injustice.

If the party chooses not to avail himself of the benefit of the statute, but to prove the facts of the sale necessary to his title in the ordinary mode, he subjects his witnesses to the ordeal of a cross examination by which every particular in relation to the regularity and sufficiency of the proceedings may be tested.

Can it be supposed that it was the intention of the legislature to allow a party claiming title under a statutory mortgage sale, after the lapse of eight years, and after suit commenced, to procure an ex parte affidavit of these facts, and use that as the only evidence of the publication—thus dispensing with the rule of evidence requiring a careful examination of the witness in open court, and allowing the opposite party the opportunity of a cross examination?

We think such a course, if tolerated, might lead to great abuse of the statute. This makes it necessary to consider the next point.

The plaintiff insisted, upon the trial, that if the sale was irregular, he was still entitled to recover, under the testimony showing that he was a mortgagee of the premises, and that the act of 1843, Ses. Laws 1843, p. 139, inhibiting the action of ejectment until after a foreclosure of the mortgage and the expiration of the time of redemption, was void, as impairing the obligation of the contract, the mortgage being of a date anterior to the act.

It is not distinctly stated, but we gather from the case certified, that the mortgage contained the usual covenant by which the mortgagee, in default of payment, was authorized to enter upon the premises and to sell them at public auction; to retain out of the money thus raised the amount due, and to pay the overplus, if any, to the mortgagor.

The mortgage was executed within this state, upon premises situated here; was intended as a security for the payment of $1500, in three

instalments of $500 each, all of which had become due at the time when the act of 1843 was passed, and before the suit was commenced.

The plaintiff insists, that the legal title having vested in him, upon forfeiture by the mortgagor, he had the right to the possession, and the consequent right to the perception of the rents, issues and profits, and that the act of 1843 hinders and affects that right.

It seems to be conceded by all who have written on this subject, that where the law sought to be invalidated affects the remedy only, .and does not touch the right of the party secured by the contract, it is not repugnant to that provision of the constitution which declares that no state shall pass any law impairing the obligation of contracts.

In the case of Sturges v. Crowninshield, 4 Wheaton 200, so often referred to upon questions of this kind, the late Chief Justice of the U. States says, "the distinction between the obligation of the contract and the remedy given to enforce that obligation, has been taken at the bar and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct."

It becomes important, then, to inquire what rights were conferred upon the plaintiff by this mortgage.

In Jackson v. Hull, 10 John. R. 481, it was held, that after default in payment, the mortgagor had only an equity of redemption in the premises; that a purchaser upon execution against him, buying with knowledge of the mortgage unsatisfied, could not defend against an ejectment brought by the mortgagee to recover the possession.

The doctrine is clearly laid down in this case, that after default in payment, the creditor may by ejectment put himself in possession of the rents and profits of the land.    4 John. R. 216.

A tenant of a mortgagor in possession, after the mortgage has become forfeited, during the continuance of the lease from the mortgagor, may attorn to and take a lease from the mortgagee, and in an action brought by the mortgagor for his rent under the lease, may set up such. attornment as a legal defence.    20 John. R. 51.    A widow of the grantee in a deed cannot claim dower in the premises, if a mortgage is at the same time given for the purchase money.    Stow v. Tifft, 15 John. R. 458.

In Hughes v. Edwards, 9 Wheaton 489, it is asserted that the mort-

gogor, after forfeiture, has no title at law, and none in equity, but to redeem upon the terms of paying the debt and interest, and that his conveyance to a purchaser, with notice, of consequence passes nothing but an equity of redemption.

In equity, a mortgage is sometimes called a lien for a debt, and so it is, and something more: it is a transfer of the property itself, as security for the debt: it is a qualified estate and security. It is called a lien only in a loose and general sense, and then only by way of contrast to an estate absolute and indefeasible. 1 Peters 441.

Lastly, it is said by Mr. Justice Story, in 1 Howard 318, that according to the long settled rules of law and equity, in all of the states whose jurisdiction has been modeled upon the principles of the common law, that the legal title to the premises vests in the mortgagee, upon the failure of the mortgagor to comply with the conditions contained in the proviso, and at law he has a right to sue for and recover the land itself.

We recognize this right in a mortgagee. In the case before us, it had become absolute before the statute in question was passed, and if it is a part of the contract between the parties, and the statute infringes upon it, the latter is unconstitutional.

It seems to us this right is a part of the contract itself. The contract includes a conveyance, by way of mortgage, of the premises in question, upon the performance of the condition of which, the property revests in the mortgagor, and upon failure of performance of which condition, the legal title is vested in the mortgagee, subject only to an equitable right of redemption upon payment.

By the common law, a right to land includes the right to enter on it where the possession is withheld from the right owner; to retain the possession, and to receive the issues and profits arising from it. Altham's Case, 8 Co. 299, referred to in Green *v.* Biddle. 5 Peters' Cond. R. 381.

Besides, there is in this case an express covenant in the deed to that effect, that upon forfeiture the mortgagee might enter into possession of the land, and sell the same to make the money. This covenant contains both a recognition of the legal right of the plaintiff, by the obligation of the contract, to the possession of the premises after non payment, and also an authority to him to pursue a particular remedy to en-

Mundy *v.* Monroe.

force that right, by advertisement and sale. This right existed, and became perfect as soon as the condition of the mortgage became forfeit; and any legislative proceeding which hinders the assertion of the right, and seriously affects it, affects the obligation of the contract.

By the non payment of the money, the plaintiff acquired the right of possession; the withholding of which by the mortgagor is in law an injury to the right of the plaintiff, who is entitled to assert his right by an immediate pursuit of the proper remedy.

In Green *v.* Biddle, it is said, "nothing can be more clear upon principles of law and reason, than that a law which denies to the owner of land a remedy to recover the possession of it, when withheld by any person, however innocently he may have obtained it, or to recover the profits received from it by the occupant; or which clogs his recovery of such possession and profits by conditions and restrictions tending to diminish the value and amount of the thing recovered, impairs his right to and interest in the property."

The situation of mortgaged premises may frequently be such as to make the mere suspension of the exercise of the right of possession a great injury to that right, as in a case where the principal value of the premises consists in buildings or other improvements made thereon, subject to destruction; or to a depreciation in value by long use.

The mortgagee, if put in possession, may apply the issues and profits in payment on the mortgage, and is required to account therefor. The mortgagor, if permitted to remain in possession, may or may not appropriate them to that purpose, at his option.

Where the premises, which is not unusual, are in the first instance a slender security for the debt, by depriving the mortgagee of the right to immediate possession, his security may be so far lessened and reduced in value as to leave little more than enough to pay the expenses of a foreclosure and sale.

In Green *v.* Biddle, the main question discussed and decided was, whether certain acts of the legislature of Kentucky, in relation to occupying claimants of lands in that state, passed severally in 1797 and 1812, were unconstitutional if found repugnant to the laws of Virginia passed in 1789, prior to the separation of Kentucky from that state.

The seventh article of the compact made between these states, upon the separation of the latter from the former, declares, " that all private

rights and interests in lands within the said district, derived from the laws of Virginia, shall remain valid and secure under the laws of the proposed state (Kentucky), and shall be determined by the laws now existing in this state," (Virginia).

The court having first determined that every part of the act of 1797 was within the purview of the act of 1812, and consequently repealed by the repealing clause in the latter act, proceeded first to inquire whether that act was repugnant to the law of Virginia as it existed at the time the compact was made. They declare that the common law of England was at that period and then was the law of that state, and refer to the rule of that law as laid down in Altham's Case, to which we have already referred; and then proceed to state that a right to land essentially implies a right to the profits accruing from it, since without the latter, the former can be of no value. Thus a devise of the profits of land, or even a grant of them, will pass a right to the land itself. Shep. Touch. 93; Co. Lit. 46. " For what" says Lord Coke in this page, " is the land but the profits thereof?" They further state, that at the period of the compact there was no statute in Virginia less favorable to the rights of those who claimed title under her than the common law. After comparing the provisions of the act of 1812 with the provisions of the existing law at the period before mentioned, the court decide that the right and interest of a claimant were not as valid and secure under this act as they were under the laws of Virginia, by which alone they were to be determined. The court say, " The objection to a law, on the ground of its impairing the obligation of a contract, can never depend upon the extent of the change which the law effects in it. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute or apparently immaterial in their effect upon the contract of the parties, impairs its obligation." The court next proceeded to determine that the act of 1812 was repugnant to the constitution of the United States, and to declare the same void, as impairing the obligation of the contract between Virginia and Kentucky; upon the principle that the constitution of the United States embraces all contracts, executed or executory, whether between individuals or between a state and individuals, and that a state has no more power to impair an obligation

into which she has herself entered, than she can the contracts of individuals.

I have made this extended reference to this case mainly for the purpose of showing that the act of assembly of Kentucky was held to be repugnant to the constitution of the United States, although we have been told by high authority, that " the question did not arise under that constitution, but under the compact." Dissenting opinion of Mr. Justice Mc Lean, in Bronson *v.* Kinzie, 1 Howard 328. It is true the question arose under the compact, but the act of 1812 being repugnant to it, impairing its obligations, was for that reason held unconstitutional.

A brief reference to some of the provisions of the act will show that, although they were in the form of remedy, they impaired the right. Among other things, the act provides that no action should be maintained for rents or profits against the occupier, for any term elapsed before the judgment or decree in the suit. It then provides for the appointment of commissioners to make a valuation of the land in its unimproved state, and of the rents and profits, and for the giving of a bond for the amount of the valuation by the party who is to pay the same, (it compelling the successful claimant to pay to a certain extent the assessed value of the improvements made on the land by the occupant), and in default thereof, provides that judgment shall be given against the party for the amount; or if the right owner fails to give a bond, the other party may at his election give a bond and take the land. It then proceeds to declare, *that the occupant shall not be evicted or dispossessed by a writ of possession, until the report of the commissioners is made, and judgment rendered, or bonds executed, in pursuance of the act.*

All this, though purporting to modify the remedy, is manifestly an infringement of the rights of the claimant, secured to him by the laws of the contract, and was so held by the court in that case, the court having determined, if we understand the opinion, that in all its provisions, the act of 1812 was obnoxious to the charge of repugnance to the law existing at the time of the compact, and necessarily to the charge of being unconstitutional.

The remedy may undoubtedly be modified, so far as the same may be done, " without impairing the obligation of the contract," and such

we apprehend is the meaning of what is said in Sturges v. Crowninshield. Otherwise we fear the result would be, that by means of merely remedial alterations in name, the substantial rights of parties may be impaired, and the provision of the constitution be set at nought.

The object and intention of the statute of 1843 was to take away the right to possession until after a foreclosure and the expiration of the time of redemption; and any other merely possessory form of action than ejectment would be held to be within the statute, as being within its equity and intention. By this act, the mortgagee is required to incur the additional expense of a foreclosure, before obtaining possession, and is deprived of the right to add to his security, by the perception of the rents and profits of the premises during the time required to accomplish this and the time of redemption, and during that time the rents and profits are given to another, who may or may not appropriate them to the payment of the debt, as he chooses, and the mortgagee in the mean time is subjected to the risk, often considerable, of the depreciation in value of the security. If the view which we have taken be correct, need it be asked whether the right and interest of the plaintiff in his security are as "valid and secure" under this act as they were under the law existing before its passage? We think it obvious, that however this may be looked upon as affecting the remedy, it does not affect that only. In Willard v. Longstreet, 2 Doug. Mich. R. 172, it was determined, on the authority of Mc Cracken v. Hayward, 2 Howard 608, and Bronson v. Kinzie , 1 Howard 311, that the provision of the act of 1841, Ses. Laws 1841, p. 45, secs. 1, 2, prohibiting the sale of property on execution unless it would bring two thirds of its appraised value, so far as it applies to the remedy to enforce previous contracts, is unconstitutional and void. The court say, " If there had been no sale or bid for two thirds the amount at which the premises were valued, they (the plaintiffs in the execution) might have insisted that the property should be sold absolutely to the highest bidder, irrespective of the appraisement; and if the sheriff had refused to sell, have applied to the court for an order upon him to do so, as was done in the case of Mc Cracken v. Hayward.

We are then led to the conclusion, that the act of the legislature is unconstitutional and void as applied to contracts existing at the time of

its passage; and having come to this conclusion, we know of no other mode of discharging our duty than so to declare it.

The plaintiff is therefore entitled to recover, and we direct it be so certified to the circuit court.

*Certified accordingly.*