Reed v. Swan.

REED *et al.* v. SWAN, *Appellant.*

Division Two, March 3, 1896.

1. **Mortgages and Deeds of Trust:** FORECLOSURE: GROWING CROPS. In the absence of statutory enactment, a foreclosure sale under a mortgage, or deed of trust in the nature of a mortgage, conveys to the purchaser title to all growing crops on the mortgaged land belonging to the mortgagor, or his tenant who leased with notice of the mortgage, after condition broken and without the consent of the mortgagee.

2. **Statute:** RETROSPECTIVE OPERATION: CONSTRUCTION. Statutes are uniformly held to operate prospectively only, unless the intention of the legislature is clearly expressed that they shall act retrospectively, or unless the language of the law admits of no other construction.

3. ————: PROSPECTIVE OPERATION: MORTGAGE: FORECLOSURE: RIGHTS OF TENANT: GROWING CROPS. Section 7091, Revised Statutes, 1889, declaring all sales made by a mortgagee under the power of sale contained in a mortgage binding on the mortgagor and all persons claiming under him, as amended by the act of March 30, 1893 (Laws, 1893, p. 210) exempting from the effects of said section the rights of a tenant of the mortgagor to the growing crops on the land to the extent of his interest under the lease, is prospective in its operation, and does not apply to a mortgage and sale thereunder, where default had been made prior to the passage of the amendatory act.

4. **Mortgages and Deeds of Trust:** FORECLOSURE: RIGHTS OF TENANT: GROWING CROPS. The mortgagee, under the facts of this case, *held* not to be estopped as purchaser at the foreclosure sale from claiming the crops planted by the tenant of the mortgagor and growing on the land at the time of the sale.

*Appeal from Ray Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Porterfield & Pence, Claude Hardwicke,* and *T. N. Lavelock* for appellant.

(1) The crop did not pass at the trustee's sale for the reason that it did not belong to the owner of

the land, the mortgagor, but to the defendant, B. F. Swan, the tenant.   There was a separate ownership of the crop from that of the land and a severance in law of the crop from the land upon which it stood. *Adams v. Leip,* 71 Mo. 597; *Jenkins v. McCoy,* 50 Mo. 349; *Harris v. Turner,* 46 Mo. 438; *Morgner v. Biggs,* 46 Mo. 66; *Towne v. Bowers,* 81 Mo. 491; *Willis v. Moore,* 59 Tex. 628; *Hershey v. Metzger,* 90 Pa. St. 217; *Bank v. Crary,* 1 Barb. S. C. (N. Y.) 542; *Warren v. Leland,* 2 Barb. S. C. 613; *Pickens v. Webster,* 31 La. Ann. 870; *Everingham v. Braden,* 58 Iowa, 133; *Gregory v. Rosencrans,* 72 Wis. 220; *Heavilon v. Bank,* 81 Ind. 250; *Barrett v. Choen,* 119 Ind. 56; *Wooley v. Holt,* 14 Bush. (Ky.) 788; *Caldwell v. Alsop,* 48 Kan. 571; *Bank v. Beegle,* 35 Pac. Rep. (Kan.) 814; *White v. Pulley,* 27 Fed. Rep. 436.   (2) 'Annual crops, crops raised by yearly labor and cultivation or *fructus industriales,* are to be regarded as personal chattels independent of and distinct from the land, capable of being sold by oral contract and without regard to whether the crops are growing or having matured have ceased to draw nutriment from the soil.'' *Garth v. Caldwell,* 72 Mo. 622; *Smock v. Smock,* 37 Mo. App. 56; *Holt v. Holt,* 57 Mo. App. 272; 3 Wash. Real Prop. [4 Ed.], top page 346; Benjamin on Sales [Bennett's Ed.], sec. 120.   (3)   It is only when such crops belong to the owner of the land that they are held to pass by a sale of the realty, and then not because they are technically a part of the realty, but for the reason that it has become a rule of construction or interpretation of the deed or contract of sale to regard the transfer of the crops; unless reserved, as within the contemplation of the parties.   If severed, either in law or fact, before a sale of the realty, they do not pass and a separate ownership of the crop distinct from that of the land works a severance in law of the crop.

Authorities cited under division 1. (4) The act of March 20, 1893 (Acts of 1893, p. 210), reserving to the tenant his rights to the growing and unharvested crops on a sale of the land under foreclosure proceedings, applies directly to this case. The law went into effect June 21, 1893, and the sale in this case was made July 5, 1893. The law is constitutional and valid. Cooley on Const. Lim. [5 Ed.], top pages 440–443, and cases cited; *Wilds v. Van Voorhis*, 15 Gray, 139; *Coe v. Ritter*, 86 Mo. 282; *State ex rel. v. Hager*, 91 Mo. 452; *Porter v. Mariner*, 50 Mo. 364; *Henschall v. Schmidt*, 50 Mo. 454. (5) The law of this state is well settled that the mortgagor is the real owner of the land, can deal with it as such so long as he is permitted to remain in possession, and is entitled to the rents and profits until entry by the mortgagee, or sale of the property under foreclosure proceedings. *Kennett v. Plummer*, 28 Mo. 145; *Woods v. Hildebrand*, 46 Mo. 284; *In re Life Association*, 96 Mo. 632; *Fountain v. Schulenberg Co.*, 109 Mo. 55, 64; *White v. Wear*, 4 Mo. App. 34; *Simpson v. Keane*, 39 Mo. App. 635. (6) Such being the case, the plaintiffs had no vested right in the growing crops at the taking effect of the act of March 20, 1893. The mortgagor or his assignee could have made whatever disposition of them they pleased, without consent of the mortgagee, and without impeachment of waste. What they could do themselves the law could do for them. A mere interest in expectancy, such as the plaintiffs had in the defendant's crop before the sale, is not considered a vested right and may be abolished at the will of the legislature. See authorities cited under division 4. See, also, *Baker's Executors v. Kilgore*, 145 U. S. 487; *Bay v. Gage*, 36 Barb. 447; *Percy v. Cockrill*, 53 Fed. Rep. 872; *McNeer v. McNeer*, 142 Ill. 388; *Loveren v. Lamprey*, 22 N. H.

(2 Foster) 434.   (7)   Defendant's fourth instruction should have been given.   The plaintiffs by their agreement with G. I. Reed to accept the defendant's rent in satisfaction of interest, and thereby inducing the defendants to plant and cultivate the corn, are estopped to claim such corn.   Big. on Estop., pp. 367, 445, 578; *Bank v. Frame*, 112 Mo. 502; *Schenck v. Sautter*, 73 Mo. 46; *Moore v. Bank*, 52 Mo. 377; *Garnhart v. Finney*, 40 Mo. 449; *Chouteau v. Goddin*, 39 Mo. 229; *Miller v. Anderson*, 19 Mo. App. 71; *Justice v. Lancaster*, 20 Mo. App. 559; *Weise v. Moore*, 22 Mo. App. 530.   (8)   Defendant's third and fifth instructions should have been given.   The plaintiffs by their recognition of the defendants as tenants, and by their acquiescence in the planting and cultivating of the corn, are estopped to claim the same.   2 Wash. Real Prop. [4 Ed.], top p. 136; *Masterson v. Railroad*, 72 Mo. 342; *Evans v. Snyder*, 64 Mo. 516; *Landrum v. Bank*, 63 Mo. 48; *Collins v. Rogers*, 63 Mo. 515. *Provolt v. Railroad*, 57 Mo. 256.

*Sandusky & Sandusky* for respondents.

(1)   A sale of land under a deed of trust carries title to growing crops upon the premises at the date of sale.   *Fischer v. Johnson*, 51 Mo. App. 187; *Hayden v. Burkemper*, 101 Mo. 644; *Vogt v. Cunningham*, 50 Mo. App. 136; *Watson v. Menteer*, 59 Mo. App. 387; *Salmon v. Fewell*, 17 Mo. App. 125; *Wallace v. Cherry*, 32 Mo. App. 436; Wood's Landlord and Tenant, sec. 124.   (2)   This is true, although the crops may have been grown by a tenant of mortgagor.   *Fischer v. Johnson*, 51 Mo. App. 157; Wood's Landlord and Tenant, sec. 124.   (3)   The authorities upon this question in this state are so clear and full that we deem it unnecessary to cite authorities from other

states or to discuss the question. The authorities cited by appellant from this state are commented upon and distinguished by the supreme court in *Hayden v. Burkemper*, 101 Mo. 644. (4) The court below correctly held that the act of March 20, 1893, could not apply to this case without giving it a retrospective operation. This act took effect June 21, 1893; the sale under the deed of trust was made July 5, 1893; the corn in controversy was a growing crop when the act took effect, and the deed of trust had already attached to it and bound it as security for the debt; otherwise a sale under the deed of trust could not pass title to the crop. If, therefore, the act of March 20, 1893, affects this case as claimed, it destroys a part of respondent's security by retrospective operation. For a full discussion upon the subject of retrospective laws, see *Leete v. Bank*, 115 Mo. 184. (5) The action of replevin will lie for corn upon the stalk, when matured. *Garth v. Caldwell*, 72 Mo. 627; *Hayden v. Burkemper*, 101 Mo. 648; *Salmon v. Fewell*, 17 Mo. App. 118; *Huff v. Henry*, 57 Mo. App. 341. There is no element of estoppel in this case.

GANTT, P. J.—Action of replevin for corn on stalk. The land upon which the corn was grown originally belonged to respondents. On June 30, 1887, they conveyed the land to J. A. Hays and G. I. Reed, who, on the same day, executed a deed of trust on the land to W. H. Seeger as trustee for Missouri A. Reed, securing unpaid purchase money. J. A. Hays and G. I. Reed conveyed the land, July 24, 1888, to the Reed Springs Town Company, subject to said deed of trust, and the defendant was a tenant under said Reed Springs Town Company. On July 5, 1893, the land was sold by W. H. Seeger, as trustee, under said deed of trust, executed by J. A. Hays and G. I. Reed, and a

trustee's deed, dated July 5, 1893, executed to Missouri A. Reed, the purchaser. At the date of the sale under the deed of trust, July 5, 1893, the corn in controversy was a growing crop on the land sold. Missouri A. Reed and Allen G. Reed, her husband, being very old, their business was transacted by their son, James F. Reed, clerk of the Clay circuit court.

In February, 1892, the Reed Springs Town Company rented the land to C. A. Swan, and in July, 1892, renewed the lease for the crop of 1893; on the rent for 1893 Swan paid about $90 cash, and assumed a note of about $200 due from G. I. Reed to J. D. Swan. Neither the respondents nor their son, James F. Reed, had any acquaintance with any of the Swans, nor did a word ever pass between them, upon any subject, prior to the trustee's sale. After the trustee's sale, James F. Reed, acting for respondents, suggested to Swan that, as purchaser of the land, the respondent was the owner of the crop growing upon the land, at the time of the sale, but that if the usual rent was paid, no claim would be made to the crop. Swan stated that they would entertain no proposition of any kind for a settlement; and thereupon this suit was brought.

No interest had been paid on the mortgage debt since April, 1891, and the taxes for 1891 and 1892 were unpaid; in October, 1892, James F. Reed, representing respondents, stated to G. I. Reed, that if he would pay the taxes for 1891 and 1892 and turn over to him the rents for 1893, he would not foreclose. James F. Reed, at that time, did not know that any part of the rent for 1893 had been paid to G. I. Reed. G. I. Reed neither paid the taxes, nor turned over any part of the rents, and the trustee sold the premises as herein stated.

The contentions of the defendant are: *First*, that

although a foreclosure sale under a mortgage conveys all growing crops of a mortgagor standing on the mortgaged lands, it will not convey the growing crops of a tenant under the mortgagor with full notice of the mortgage and its conditions; *second*, that even if it should be held that by the law of this state prior to the act of March 20, 1893, which took effect June 21, 1893, that a tenant's crops passed by a sale of the land under a mortgage or deed of trust that act changed the law and reserved the growing and unharvested crops to the tenant and governs this case; *third*, that plaintiff was estopped to claim said crops by the conduct and knowledge of her agent and son, J. F. Reed.

I. Prior to the act of March 30, 1893, Laws of Missouri, 1893, page 210, it was the settled law of this state that a sale of land under a mortgage or deed of trust in the nature of a mortgage conveyed the title to the purchaser or grantee to all crops of the mortgagor growing upon the mortgaged land at the date of sale. The reason of the law being that the deed conveyed the land and by the common law growing crops are a part of the freehold and pass by the deed with the land. *Boyer v. Williams*, 5 Mo. 335; *McIlvaine v. Harris*, 20 Mo. 458; *Steele to use v. Farber*, 37 Mo. 72; *Pratte v. Coffman's Ex'r*, 27 Mo. 425; 2 Jones on Mortgages, sec. 1658; *Ivy v. Yancey*, 129 Mo. 501.

In *Hayden v. Burkemper*, 101 Mo. 644, the rule was held to apply as well to the crops of the purchaser of the land from the mortgagor with notice as against the mortgagor himself.

A distinction is now endeavored to be drawn between one who purchases the fee from the mortgagor subject to the mortgage and a lessee from the mortgagor with notice of the mortgage and after condition broken. We are not impressed with the soundness of such

distinction.   On the contrary we think it is plain that a lessee of the mortgagor under a lease made subsequently to the mortgage, with notice of the terms thereof, without the concurrence of the mortgagee, has no greater right to the crops, growing and unsevered, than the mortgagor himself would have after condition broken.   The rights of the tenant can rise no higher than those of his landlord.   2 Taylor on Landlord and Tenant, sec. 537; *Lane v. King*, 8 Wend. 584; *Walmsley v. Milne*, 7 C. B. N. S. 115.

This has been uniformly so ruled by the Kansas City court of appeals in a number of well considered cases.   *Salmon v. Fewell*, 17 Mo. App. 118; *Fischer v. Johnson*, 51 Mo. App. 157; *Vogt v. Cunningham*, 50 Mo. App. 136; *Watson v. Menteer*, 59 Mo. App. 387.

We are satisfied with the prior adjudications of this court and the Kansas City court of appeals upon this point.   They express the policy of the state from its organization.   They relate to the ownership of real property and should not be disturbed save for the gravest reasons, and accordingly the first point must be ruled against the defendant.

II.   But it is insisted that the act of March 30, 1893 (Laws, 1893, p. 210), must control the disposition of this case.   The circuit court held that act was prospective, otherwise it would be a clear violation of section 15, article 2, of the constitution of Missouri of 1875, which prohibits retrospective legislation.   In the construction of legislative enactments the uniform rule is that they must be held to operate prospectively only, unless the intention of the legislature is clearly expressed that they shall act retrospectively, or unless the language of the law admits of no other construction. *State ex rel. v. Auditor*, 41 Mo. 25; *State ex rel. v. Ferguson*, 62 Mo. 77; *State ex rel. v. Hays*, 52 Mo. 578; *Leete v. Bank*, 115 Mo. 184.

The enactment in question is an amendment of section 7091, Revised Statutes, 1889, and consists of this proviso: "Provided, that nothing herein shall be construed to affect in any way the rights of a tenant to the growing and unharvested crops on land foreclosed as aforesaid, to the extent of the interest of said tenant under the terms of contract or lease between such tenant and the said mortgagor or his personal representatives." There is obviously nothing in these words which expressly requires a retrospective effect to be given to them and it is plain that without violence to the language, we can with propriety construe the words as applicable to prospective leases of mortgaged lands, and sales thereof under mortgages or deeds of trusts thereafter made and delivered.

Accepting, as we do, Mr. Justice STORY's definition of a retrospective law, namely that, "every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective" (*Society v. Wheeler*, 2 Gall. 139; Sedgwick on Construction of Stat. and Const. Law [2 Ed.], p. 160), it seems to us that if the construction put by defendant on this amendment is correct it is clearly a retrospective enactments in respect to the plaintiff's rights under her mortgage.

Prior to its passage, by contract she had obtained a valid deed of trust to secure two notes, one for $7,500 and the other for $15,000. Prior to the passage of this act both of these notes were past due and unpaid. By the terms of this deed of trust she was then authorized to require the trustee therein to sell said lands to satisfy said notes, and the interest thereon from April 30, 1891. This deed of trust was duly recorded.

In the spring of 1893 defendant, under an agree-

ment with G. I. Reed, as president of the Reed Springs Town Company, which owned the land subject to plaintiff's deed of trust, planted a corn crop on this mortgaged land and it was up and growing, prior to the passage of this law. Under the then existing law of Missouri, plaintiff's deed of trust became at once a lien upon all of said land and all crops growing thereon. She was entitled upon condition broken to the possession, and rents, issues and products. It was a vested right. It was her absolute right as the law stood up to June 21, 1893, to have the *whole* of said land sold, *not a part merely.*

By operation of law the growing crops became a part of the freehold, but if this law of March 30, 1893, is to be held applicable to a mortgage executed long prior to its passage and the condition of which was also broken prior to its enactment, then the legislature has deprived her of her right to foreclose her mortgage on a part of the land upon which she previously had a lien. That the protection of the constitution applies as fully to a *part* as to the *whole* of her vested rights, and protects every part from injury or diminution, follows as a necessary consequence.

That a mortgage is a vested interest and its main incident a right to have the land applied in discharge of the debt, was affirmed by the supreme court of the United States in *Gantly's Lessee v. Ewing*, 3 How. (U. S.) 707.

So a state law passed subsequently to the execution of a mortgage which declares that the equitable estate of the mortgagor shall not be extinguished for twelve months after a sale under a decree in chancery, and which required the land to bring two thirds of its appraised value, was held to be in violation of the constitution of the United States, in *Bronson v. Kinzie*, 1 How. (U. S.) 311. So a law which takes away from

the mortgagees the right to possession under their mortgages, until after foreclosure, is void because depriving them of the rents and profits which was a valuable right secured by the contract.   See, also, *Mundy v. Munroe*, 1 Mich. 68; Cooley on Const. Limitations [6 Ed.], p. 352; *Collins v. Collins*, 79 Ky. 88; *Edwards v. Kearzey*, 96 U. S. 595; *Ins. Co. v. Brouse*, 83 Ind. 62; *Robards v. Brown*, 40 Ark. 423; *McNichol v. U. S., etc., Agency*, 74 Mo. 457.

Accordingly, we hold that the act of 1893 is prospective only in its operation and did not and could not, under the constitution of this state, affect the vested rights of plaintiff as mortgagee in the land on which the corn was growing and that defendant planted the corn on said lands at his own risk after the breach of the conditions in the deed of trust; that the crops passed by the trustee's deed as part of the land.

III.   As to the estoppel, there is none in the case.   It appears that plaintiff was disposed to be lenient and give the Reed Springs Company an opportunity to sell on condition it would pay the taxes and rent for the premises.   This was the condition upon which a foreclosure would be waived, but the proposition was never acceded to, and in no manner estopped plaintiff from proceeding to enforce her deed of trust. As between plaintiff and defendant not a word ever passed until after plaintiff had purchased the land on July 5.   After obtaining the deed the son of plaintiff endeavored to arrange with defendant whereby defendant could pay plaintiff rent, but this offer was spurned.   It is clear that defendant took his lease from a mortgagor after the mortgage was forfeited, and with full knowledge.   Plaintiff did not know that G. I. Reed had told defendant of her proposition not to foreclose if the springs company would pay the taxes and rent, but if she had, her promise was only

conditional and defendant knew this and yet took the lease and planted the crop without requiring G. I. Reed to comply with the conditions upon which they knew the foreclosure was to be stayed. Plaintiff's rights were of record and notice to the world. Upon these facts no estoppel can be based. The dictates of common prudence would have suggested to defendant to have plaintiff join in the lease, or satisfy himself that the conditions had been complied with, but he did neither.

To hold that a defaulting mortgagor can resort to a scheme like this, and deprive the mortgagee of her rights to possession and the rents, and products, would be to invite parties to have recourse to sharp practices to reap the benefits of the mortgaged property after their rights have been foreclosed. The judgment of the circuit court is affirmed. SHERWOOD and BURGESS, JJ., concur.