o
| 32 | 419 |
| 43 | 643 |
| 32 | 419 |
| 46 | 15 |
| 32 | 419 |
| 50 | 139 |
| 32 | 419 |
| 55 | 611 |
| 32 | 419 |
| 63 | 578 |

W. C. CULVERHOUSE, Administrator, Respondent, v. RUSSELL WORTS, Appellant.

Kansas City Court of Appeals, November 19, 1888.

1. **Practice**: WEIGHT OF EVIDENCE: HOW FAR ISSUES SUPPORTED TO BE DETERMINED BY JURY: JUDICIAL NOTICE. If there is any evidence tending to prove an issue, the finding must be left to the court trying the case, or the jury. While it is true that among those matters whereof courts will take judicial notice is that certain crops mature at certain seasons, courts will not notice the precise day a given crop reaches its maturity, especially when it appears that the time of maturing varies.

2. **Sale of Mortgaged Premises**: EFFECT OF AS TO TENANCY: CASE ADJUDGED. The sale of the land, in this case, under the deed of trust, extinguished the tenancy theretofore existing between plaintiff and defendant, and defendant being the purchaser of the lessor's reversion at the trustee's sale acquired all of the interest of his lessor, and, from and after the receipt of his deed from the trustee, being in possession of the land, held the same as owner by right of his purchase. The parties stand in the relation of vendor and vendee, rather than that of landlord and tenant.

3. **Growing Crops :** RULE AS BETWEEN LANDLORD AND TENANT. Growing crops planted by the owner of the soil constitute a part of the realty ; but if planted by a tenant, who holds under the owner of the soil, and the same are fit for harvesting, or by any one whose tenancy is for an uncertain period of time, annual crops are regarded as personal-property, liable to become part of the realty if the tenant voluntarily abandons or forfeits possession of the premises. Growing crops, standing upon the land, when the latter is conveyed, pass as part of the realty, if planted by the grantors. But against both mortgagor and his tenant, under a lease made subsequent to a mortgage, the growing crops pass under a foreclosure sale with the land to the purchaser.

4. **Rent in Arrear :** ASSIGNABILITY OF : HOW RELATED TO REVERSION. Rent in arrear is a mere chose in action, and not assignable so as to give an action in the name of the assignee ; but if not severed rent to accrue follows the reversion as an incident into the hands of the assignee, even to a purchaser at sheriff's sale ; and the sale of the land severs the relation of landlord and tenant, and conveys the reversion to the purchaser.

*Appeal from Cooper Circuit Court.*—HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

The case is stated in the opinion.

*Walker & Johnston* and *S. H. Blaydes*, for the appellant.

(1) This rent was not due until the crop had matured, and this was after the trustee's sale and purchase by the defendant. *Ridgeley v. Stillwell*, 27 Mo. 128 ; *Burgee v. Turner*, 20 Mo. App. 34 ; *Vegely v. Robinson*, 20 Mo. App. 199. (2) The sale by the trustee, on September 3, 1887, extinguished the tenancy, and defendant having purchased Elliott's land, can plead his purchase in bar. R. S. 1879, sec. 3080 ; *Gunn v. Sinclair*, 52 Mo. 327 ; *Higgins v. Turner*, 61 Mo. 249 ; *Silvey v. Summer*, 61 Mo. 253. (3) The trustee's sale, on September 3, 1887, of the land, to defendant, gave defendant title not only to the land but the corn that

was growing thereon. *Steele v. Farber*, 37 Mo. 71 ; *Salmon v. Fewell*, 17 Mo. App. 118. The evidence is conclusive that the corn was not matured, but was green, still growing and drawing sustenance from the soil. Even without any evidence on this point, the court would take judicial notice that the corn was not matured on the third day of September. *Garth v. Caldwell*, 72 Mo. 622 ; Bliss on Code Plead. sec. 188. The declarations of law asked by defendant embodied these principles, and should have been given, and the declarations of plaintiff should have been refused, as they announced a contrary principle. For these reasons we confidently think the case should be reversed.

*Cosgrove & Johnston*, for the respondent.

(1) The instructions on both sides submitted the question as to the maturity of the corn on the third of September, 1887, the date of defendant's purchase of the land. The evidence was conflicting on this point but the court, sitting as a jury, found that the corn on that date was matured, and, therefore, did not pass with the land to the defendant. It was not growing corn. This court will not disturb the finding of the court below, unless there was no evidence at all upon which to base it. *Salmon v. Fewell*, 17 Mo. App. 118 ; *Downard v. Groff*, 40 Iowa, 597 ; *Baum v. Fryrear*, 85 Mo. 151. While the courts will take judicial notice that certain crops mature at certain seasons they will not take notice of the precise time of such maturity. Bliss on Code Plead. sec. 188; *Garth v. Caldwell*, 72 Mo. 622 ; *Dixon v. Niccols*, 39 Ill. 372. In the case of *Salmon v. Fewell*, 17 Mo. App. 118, the case chiefly relied on by counsel for appellant in support of their case, it is stated by the court that "defendant offered evidence tending to show that the crop was mature at the time of the sale. And plaintiff offered evidence tending to show that the same was not mature at the time of the sale. The court found that said crop at the time of the sale

was not mature." (2) The evidence shows that after the purchase of the land by defendant, he gathered and delivered to plaintiff the corn in controversy as he had agreed and promised to do. Such delivery gave plaintiff the legal title to the corn, and authorized him to sue any one interfering with it. (3) The instructions given for plaintiff, taken together, fairly present all the issues. The first instruction asked by defendant was in the nature of a demurrer to the evidence and was properly refused. Defendant's second instruction simply submitted the question of the maturity of the corn at the time of his purchase of the land, which was fairly submitted by plaintiff's second instruction, and the refusal to give it could not have affected the result. It was only a repetition of an instruction already given, and the court committed no error in refusing it. *Boone v. Railroad*, 20 Mo. App. 232; *Walker v. Martin*, 10 Mo. App. 589; *Condon v. Railroad*, 78 Mo. 567; *State v. Kelley*, 85 Mo. 143; *Ins. Co. v. Hauck*, 83 Mo. 21. The third instruction asked by defendant is based upon the theory that the corn in controversy passed with the land to him by the sale under the deed of trust, whether matured or not at the time of the sale. This is not the law and the instruction was properly refused. See authorities above cited.

Ramsay, J.—The plaintiff, as administrator of the estate of J. A. Elliott, deceased, brought this action of replevin, in one of the justice's courts of Cooper county, for possession of some eighty barrels of corn. Plaintiff recovered a judgment in the justice's court, from which the defendant appealed to the circuit court of Cooper county, where the cause was tried again before the court, a jury being waived by the parties, resulting in a judgment for plaintiff from which the defendant has appealed to this court.

The facts established by the evidence are substantially as follows: On October 17, 1882, J. A. Elliott executed and delivered his deed of trust, of that date, to

J. H. Wooldridge, by which he conveyed to R. W. Whitlow, trustee, the east half of the northwest quarter of section 11, in township 48, of range 16 (with other lands), in Cooper county, for the purpose of securing to Wooldridge the payment of a two thousand-dollar note. The deed of trust contained the usual provisions for sale of the land in case of a default in payment of the note secured by it. In March, 1886, Elliott rented this eighty acres of land, which was still incumbered by the deed of trust mentioned, to the defendant, under a contract by which the defendant agreed to pay said Elliott two-fifths of the corn raised on the land, the corn to be by defendant gathered and cribbed on the premises. No time was agreed upon between the parties, when the rent corn should be delivered other than "in the fall when the defendant gathered his corn." On July 9, 1886, J. A. Elliott died and the plaintiff Culverhouse, on taking charge of his estate, continued the lease with defendant for the year 1887 upon the same terms as to payment of rent and amount of rent, etc. On the third day of September, 1887, R. W. Whitlow, trustee in the deed of trust before mentioned, sold the land, thus rented to defendant, under said deed of trust, at public sale, and the defendant purchased the same for the price of sixteen hundred dollars and received a deed therefor from said trustee.

The contention in this suit is over the ownership of two-fifths of the corn raised by defendant on the land during the summer of 1887, the plaintiff claiming it as rent due to him under his contract with defendant, and the defendant claiming that by the sale of the land which he had rented, under the trust deed, the lease between him and plaintiff was extinguished, that the corn growing on the land at date of sale passed with the land and that he, being the purchaser at such sale, became the owner of it by right of his purchase.

Both plaintiff and defendant introduced evidence concerning the condition of the corn on the third day of September, 1887, the day the land was sold under the deed of trust, the plaintiff aiming thereby to show that

the corn had matured to such an extent that it no longer drew nourishment from the soil, and the defendant intending by such evidence to prove that the corn was not then matured, but was still drawing sustenance from the ground.

The plaintiff introduced some statements made by defendant, tending to show that defendant recognized the right of plaintiff to a portion of the corn, after September 3, 1887. Upon the other hand the defendant testified that he had been informed by Wooldridge before the sale of the land, that the purchaser at the sale under the deed of trust would get the corn, that he expected to get the crop when he purchased, and the evidence of both parties showed that in the month of November, when defendant was gathering the corn, the plaintiff was at his place, and that defendant asserting his claim to the corn, they went together to Boonville to consult with counsel as to the matter. As a result of this inquiry into their respective rights in the premises this suit was instituted.

The plaintiff asked, and against the objection of defendant, the court gave the following declarations of law:

"1. The court declares the law to be, that by the sale of the land, on which the corn in controversy was growing, under a deed of trust, and the purchase thereof by the defendant, did not give the defendant any right to the corn, but the same being personal property remained the property of the plaintiff.

"2. If the court, sitting as a jury, believes that at the time of the sale of the land under the deed of trust, and the purchase of the same by the defendant, the corn in controversy was standing thereon, and had ceased to draw nourishment from the soil, then said corn was personal property and did not pass with the land to the defendant.

"3. If the court, sitting as a jury in this case, shall find, from the evidence, that the defendant promised and agreed to deliver to the plaintiff two-fifths of the corn raised on said land, rented by plaintiff to

defendant, and that after said renting said land was sold under deed of trust, and the defendant became the purchaser thereof, and after the date of the purchase of said land by the defendant, he promised and agreed to gather the two-fifths of said corn, and place it in a house on said land, designated by plaintiff, and did so gather and store said corn and afterwards claimed and took possession of the same as his own, then such gathering and storing said corn was a delivery to plaintiff by the defendant and the plaintiff is entitled to recover in this action, and the finding of the court will be for him."

The defendant then asked the court to give the following declarations of law, which the court refused:

" 1.    The court declares that under the evidence in this cause, the finding must be for defendant.

"2.    If the court finds from the evidence, that the corn in controversy was grown by the defendant on land rented by defendant from J. A. Elliott, in his lifetime, and that said land had been, prior to said renting, conveyed by said Elliott to one R. W. Whitlow, as trustee, to secure a note given by said Elliott to one Wooldridge, and if the court further finds that said land was, by said trustee, sold on September 3, 1887, and that defendant became the purchaser thereof, and the court further finds that at the time of said sale, said corn was not matured but was still drawing sustenance from the soil, then the finding must be for defendant.

"3.    If the court, believes from the evidence, that the corn in controversy was grown by the defendant on land rented by defendant from J. A. Elliott, and if the court further finds that he was to pay as rental, two-fifths of said corn so grown, and if the court further finds that said Elliott had, prior to said letting, conveyed said land to one R. W. Whitlow, as trustee, to secure the payment of a certain note therein described, and that said Whitlow did, on September 3, 1887, as such trustee, sell said land, and that defendant became the purchaser thereof, then the finding must be for defendant."

These instructions present the theory adopted by the court at the trial.

It is contended by counsel for the defendant that the plaintiff offered no evidence tending to show that the corn was ripe, and had ceased to draw nourishment from the soil, on the third day of September, 1887, and that this court should take judicial notice of the fact that the corn in question was not matured on that day.

We do not deem it necessary to rest a decision upon this point. While we might readily conclude that the weight of evidence established the fact that the corn was then growing and not matured, this court will not undertake to weigh the evidence and say that the finding below was against its preponderance. If there is any evidence tending to prove an issue, the finding must be left to the court trying the case, or the jury. *Baum v. Fryrear*, 85 Mo. 151. And while it is true that among those matters whereof courts will take judicial notice is that certain crops mature at certain seasons, courts will not notice the precise day a given crop reaches its maturity, especially when it appears that the time of maturity varies. *Dixon v. Niccolls*, 39 Ill. 372. If we believed that the rights of the parties hinged upon the question whether the corn was matured on the third day of September, 1887, then we should feel inclined to hold that the defendant was entitled to the second instruction asked by him. It certainly presented his theory and was made applicable by the evidence he introduced upon that point.

To consider the rights of these parties to the corn in question, it becomes necessary to ascertain the relation they bore to each other after September 3, 1887, and when this suit was instituted.

The sale of the land by Whitlow, under the deed of trust, extinguished the tenancy theretofore existing between plaintiff and the defendant. *Barclay v. Pickles*, 38 Mo. 143. And the defendant being the purchaser of the lessor's reversion at the trustee's sale acquired all of the interest of his lessor, and from and after the receipt of his deed from Whitlow, being in possession of the land, held the same as owner by right

of his purchase. *Gunn v. Sinclair*, 52 Mo. 327; *Higgins v. Turner*, 61 Mo. 249; *Silvey v. Summer*, 61 Mo. 253; *Pickett v. Ferguson*, 45 Ark. 177. Had some third party purchased the land, at the trustee's sale, and on receiving his deed had shown it to the defendant, then the defendant could have been compelled, after rent became due, to attorn to such third party. R. S., 1879, secs. 3080, 3103, 3104. Therefore the parties should be regarded as standing in the relation of vendor and vendee, rather than that of landlord and tenant.

Viewed in this light, what were the respective rights of the parties after the sale of the land on September 3? Whether the corn was ripe and had ceased to draw nourishment from the soil, is immaterial. It will be discovered that most, if not all, of the cases where it is held that the ownership of grain should be determined by its condition and not by the fact that it was or was not severed from the ground, are cases between landlord and tenant, or the assignee of a landlord and a tenant, who was in possession before the assignment. Some authorities seem to draw a distinction, in this particular, in favor of the tenant. Thus, Washburne in his work on Real Property (vol. 1, sec. 5), expresses it: "Growing crops planted by the owner of the soil constitute a part of the realty, but if planted by a tenant, who holds under the owner of the soil, and the same are fit for harvesting, or by one whose tenancy is for an uncertain period of time, annual crops are regarded as personal property, liable to become part of the realty if the tenant voluntarily abandons or forfeits possession of the premises. Growing crops standing upon the soil when the latter is conveyed pass as part of the realty, if planted by the grantor." In the case of *Hecht v. Dettiman,* 56 Iowa, 679, the same distinction is drawn. Other authorities ignore this distinction, and hold that against both mortgageor and his tenant under a lease made subsequent to the mortgage, the growing crops pass under a foreclosure sale with the land to the purchaser; that such crops are covered by the mortgage

until severance. 1 Jones on Mortgages. sec. 697, and cases cited ; *Id.* sec. 780, and 2 *Id.* sec. 1658.

But aside from this, it is difficult to see what right plaintiff has to the corn in question. It is shown by the evidence that, under the defendant's contract with Elliott as well as with plaintiff, the rent corn was to be gathered by defendant in the fall when he gathered corn, and cribbed on the land. It is not claimed that this rent was due or had accrued on the third of September, when the land was sold. The plaintiff, under the contract with defendant, could not have demanded his rent on that day. Under this state of affairs we think there can be no question that the rent to accrue or fall due in the future followed the reversion as an incident to it, and in this instance, the defendant, by his purchase from Whitlow, becoming owner of the reversion, also became owner of the unaccrued rent.

Taylor on Landlord and Tenant, at section 447, says : "Rent in arrear is a mere chose in action, and not assignable so as to give an action in the name of the assignee, but if not severed, rent to accrue follows the reversion as an incident into the hands of the assignee, even to a purchaser at sheriff's sale." The case of *Page v. Lashley*, 15 Ind. 152, is similar to the one at bar in some particulars. There the land was conveyed with full covenants, on the third day of September, but was at the time in possession of the grantor's tenant, who held under a lease which did not expire until March 1, next ensuing. The rent for the year was an entire sum of one hundred and twenty dollars. The grantor afterwards collected the rent of the tenant, and when he sued his grantee, the assignee of the reversion, for the purchase price of the land, it was held that the grantee was entitled to all the rent for the year as a set-off in the suit against him. In *Vaughn v. Lock*, 27 Mo. 290, NAPTON, J., said : "At common law as rent follows the reversion, or ownership of the land, no apportionment would be made, but the monthly, quarterly or annual rent would follow the land and belong to the

owner at the time it accrues." This rule of the common law has been changed in no manner by our statute, but on the contrary is recognized in the sections of the statute hereinbefore cited.

This being the rule of law governing such cases, it is evident that the sale of the land under the deed of trust not only severed the relation of landlord and tenant, which up to that time was existing between plaintiff and defendant, but as effectually conveyed the reversion, with the rent to accrue incident to it, to the defendant as it would have done had the purchaser been a stranger to the lease.

We find nothing in what was said or done by either of the parties after September 3 which, in our opinion, affected the rights of the parties, as settled by the sale. It is true it appears that defendant was not quite certain of his ownership of the corn. This is by no means surprising. When we find learned counsel differing so widely as to the ownership of it, and contending so ably in support of diverse opinions, it would be but just to grant to the parties a little latitude in this regard. The evidence does not show a delivery of the corn to plaintiff. The possession of the farm and the old house mentioned in the evidence, by defendant, after the sale and consequent extinguishment of the tenancy, was no longer the possession of plaintiff (his former landlord).

For the reasons herein given we think the court erred in giving the first and third declarations of law asked by plaintiff and in refusing the first and third asked by the defendant. Its judgment is, therefore, reversed and the cause remanded for further proceedings in accordance with this opinion. All concur.