THE CITIZENS STATE BANK OF TRENTON, MISSOURI, Appellant, v. ROSS KNOTT and ALLEN KNOTT, Respondents.

Kansas City Court of Appeals, April 1, 1918.

1. **REPLEVIN: Mortgages and Deeds of Trust: Growing Crops.** A lessee of the mortgagor of land, under a lease made subsequent to the mortgage, with notice of the terms thereof, without the concurrence of the mortgagee, has no greater right to crops, growing on said land and unsevered, than the mortgagor himself would have after condition broken.

2. ———: ———: ———. The object of the proviso in section 2841, R. S. 1909, regarding growing and unharvested crops on lands foreclosed was to protect the tenant who had the growing crop at the time of the sale of the land, whether he be the tenant of the mortgagor himself, or the tenant of his grantees, and therefore the mortgagor's grantees immediate or remote, are included within the meaning of the words "his personal representatives."

3. ———: ———: ———. A mortgagor who, after default in payment and after notice of sale under the terms of the mortgage,

but before sale, leases the mortgaged premises to a tenant who knew the facts, is not entitled to the benefit of the proviso in section 2841, R. S. 1909.

Appeal from Grundy Circuit Court.—*Hon. G. W. Wanamaker*, Judge.

REVERSED AND REMANDED (*with directions*).

*Hall & Hall* for appellants.

*R. E. Kavanaugh* for respondents.

TRIMBLE, J.—The suit herein is in replevin for the possession of corn grown upon a certain farm in the year 1915. Defendants prevailed in the trial court and plaintiff has appealed.

It was agreed in the trial court that on May 9, 1914, Ruth Clark and husband owned the farm in question subject to a $7000 deed of trust which they had assumed and agreed to pay. On said date they gave a second deed of trust on said land to Edwin R. Sheetz, Trustee for the Jamesport Bank to secure a loan for $1000. The Clarks owed plaintiff, the Citizens State Bank of Trenton, money borrowed of it which they failed to pay. Suit was brought, judgment obtained and execution levied upon the land for said money. The land being about to be sold, the Clarks deeded the land to the defendant, Ross Knott, and the latter, with his father and co-defendant herein as security on the injunction bond, enjoined and stopped the sale.

In settlement of this injunction suit and of the Clark debt, Ross Knott and wife gave plaintiff a deed of trust on the land for $1050, subject to the two former deeds of trust already thereon.

The second deed of trust, the one held by the Jamesport Bank was foreclosed on August 23, 1915. The plaintiff bank, in order to protect its loan, procured one, Arnote, to attend the sale and bid on the land under an agreement that if he became the purchaser at the foreclosure sale he would pay plaintiff at the rate

of $40 an acre for the land. He attended the sale and bid the land in at the amount of the debt and cost of sale and received a trustee's deed therefor.

At the time of the sale there was 100 acres of corn growing on the land, being cultivated and raised by four tenants who had rented the land for half grain rent.

After Arnote had purchased the land at the foreclosure sale he assigned his interest, whatever it was, in said corn to the plaintiff bank. The amount for the land at $40 per acre was computed and after deducting therefrom the amount of the first mortgage and the purchase price paid at foreclosure under the second, left due the Bank from Arnote the sum of $600. This amount the bank voluntarily credited upon Ross Knott's note to secure which the third mortgage had been given.

At the time of the foreclosure sale and at the time defendant Ross Knott's note was credited with the above-mentioned $600, the plaintiff bank knew that the four tenants who were raising and cultivating the corn and which was then green and growing on the land, were to have half of it for their services, but did not know that the other half, or the landlord's part, was claimed by anyone other than the owner of the fee, Ross Knott. It seems that after Ross Knott had given the third deed of trust he and his father orally exchanged possession of farms with each other, that is Ross Knott moved upon one of his father's farms and in exchange therefor the father, Allen Knott, rented the son's farm to the four tenants above referred to. The father, Allen Knott, had retired from farming and lived in town. It was conceded that he did not raise any part of said corn and, when the exchange of farms was made with the son, had no intention of farming the land himself.

After the foreclosure and after the assignment by the purchaser of his interest in the crop to the plaintiff bank, the tenants who had raised the corn received their half of it and the other half was being gathered and cribbed on the farm when Allen Knott laid claim

thereto and began hauling it away. Thereupon plaintiff bank brought the replevin suit.

The defendant Allen Knott claims that under the oral exchange of farms between himself and his son he was a tenant of his son, and that, therefore, his half of the corn did not pass to the purchaser at the foreclosure sale, he claiming to be protected by the proviso to section 2841, Revised Statutes 1909, relating to the foreclosure of all right and equity of redemption to lands sold under mortgages and deeds of trust, said proviso reading as follows:

"Provided, that nothing herein shall be construed to affect in any way the rights of a tenant to the growing and unharvested crops on lands foreclosed as aforesaid, to the extent of the interest of such tenant under the terms of contract or lease between such tenant and the said mortgagor or his personal representatives."

The court overruled plaintiff's request for a peremptory instruction to find for it. Thereupon plaintiff submitted instructions embodying the facts as above set forth (about which there was no controversy), and stating that if such were found to be true then Arnote when he became purchaser at the foreclosure sale became "entitled to the corn growing on said land at the time of said purchase subject to the rights of the tenants who had corn growing on said premises at the time of said sale," and that if he sold and assigned his interest in said corn to the plaintiff bank, the finding must be for plaintiff; also that even if, under the agreement between Ross Knott and his father, the defendant Ross Knott assigned the use of his farm to his father Allen Knott, in exchange for the use of other lands of the father elsewhere, this would not entitle the father to the possession of the corn in controversy. The court refused to give said instructions as prayed but modified them by striking out entirely the portion hereinabove inclosed in quotation marks, and by inserting in said instructions the additional clause that "if the jury further find that Allen Knott acquired only such right and right to use from Ross Knott as Ross Knott has as

owner, subject to the mortgage,'' then the finding should be for plaintiff.

We are somewhat at a loss to understand just what this additional clause inserted in the instruction means or what question was intended to be thereby submitted to the jury. Whatever may be its meaning, it would seem to be open to the objection that it apparently submits some sort of a legal question to the jury as to the effect of the mutual exchange of the use of the respective farms between father and son. However this may be, we do not think there was any question to be submitted to the jury, since there was no question of fact involved or disputed. The various deeds and the assignment of the purchaser's interest in the growing crop were all in writing and undisputed, and the only question involved was the question whether the father, Allen Knott, can be said to be a tenant within the meaning of said proviso in said section 2841, and that is a question of law.

It will be observed that the tenants who raised the corn have received their half, and plaintiff has made no claim to anything belonging to them. Under defendant's own testimony Allen Knott was not a tenant on the farm in the sense of that term as used in the statute. He did not have a crop of corn growing on said farm at the time of the sale. The arrangement between them was made with full knowledge on the part of both defendants of the existence of all three deeds of trust and of the liability of foreclosure before the maturing or severance of the crops.

Under the common law and prior to the statutory proviso, growing crops, forming a part of the realty and following the title thereto, passed with the land to the purchaser under foreclosure. [8 Am. & Eng. Ency. of Law (2 Ed.), 303; Wells v. Bente, 86 Mo. App. 264; 12 Cyc. 977; 8 R. C. L. 361; Reed v. Swan, 133 Mo. 100.] And this rule applied as well to the crops of the purchaser of the land from the mortgagor, with notice, as to the crops of the mortgagor himself. [Hayden v. Burkemper, 101 Mo. 644.] In Reed v. Swan, supra, it

is said, p. 107, "we think it is plain that a lessee of the mortgagor under a lease made subsequently to the mortgage, with notice of the terms thereof, without the concurrence of the mortgagee, has no greater right to the crops, growing and unsevered, than the mortgagor himself would have after condition broken. The rights of the tenant can rise no higher than those of his landlord. [2 Taylor on Landlord and Tenant, sec. 537; Lane v. King, 8 Wend. 584; Walmsley v. Milne, 7 C. B. N. S. 115.]"

In Nichols v. Lappin, 105 Mo. App. 401, l. c. 404, it is said: "The proviso was appended to the above statute to protect tenants who happen to have growing crops when a foreclosure sale occurs, against losing the proceeds of their labor." And in Wells v. Bente, supra, p. 268, the court, in discussing what was meant by the above-mentioned proviso in the statute, says: "It is worthy of remark that in the discussion of this question the authorities constantly refer to whether this or that meaning contended for would be reasonable. Applying the foregoing to the statute in question, we are satisfied that the object of the statute was to protect the tenant who had the growing crop at the time of the sale of the land, whether he be the tenant of the mortgagor himself, or the tenant of his grantees; and that therefore the mortgagor's grantees, immediate or remote, were included within the meaning of the words, 'his personal representatives.' "

Since Allen Knott made the arrangement with his son with full knowledge of the liability of the land to foreclosure, the language used in Nichols v. Lappin, supra, at page 407, is likewise applicable here, viz: "It would scarcely be contended that if a mortgagor, after default in payment and after notice of sale under the terms of the mortgage, but before sale, should lease the premises to a tenant who knew the facts, the latter would have the benefit of the statute. That contention would enable the mortgagor to enjoy the proceeds of the incumbered land months after he had lost the title and the right to possession; for he might lease

for cash instead of a share of the crop, as was done in the present instance.'' Suppose Ross Knott had deeded the land to his father instead of making the oral arrangement that he did, the father would have had no greater rights than his grantor, and clearly could not have claimed the right to hold his grantor's share of the crops. If so, it is difficult to see how he could have any greater claim by substituting himself in the owner's place by means of the oral exchange.

The language of the proviso in confining the protection afforded thereby ''to the extent of the interest of such tenant under the terms of contract or lease between such tenant and the said mortgagor or his personal representatives'' shows that the purchaser at foreclosure sale would acquire an interest in the crops growing on the land at the time of the sale, and the statute intended to protect only the tenants who grew or might grow crops on the mortgaged land that were unserved and formed a part of the realty at the time of the foreclosure.

We think that to allow defendants' contention would extend the statute beyond its evident purpose and intention, and enable a mortgagor to enjoy the proceeds of the incumbered land long after he has lost the title and the right to possession.

The judgment is, therefore, reversed and cause remanded with directions to render judgment in proper form for plaintiff. All concur.