H. H. HAYWARD, Appellant, A. W. POINDEXTER, Respondent.

Springfield Court of Appeals, March 25, 1921.

1. **CROPS:** **Standing Crop goes to Vendee.** A standing crop on land conveyed by general warranty deed without exception or reservation, or without exception or reservation in a contemporaneous contract concerning the sale of the land, goes to the vendee, unless there is evidence that the crop has actually been severed from the soil before the transfer or evidence from which the court can find that the parties treated the crops as severed from the land.

2. ————: **Contract and Deed Held Not to Retain Crop to Vendor.** contract between vendor and vendee of farm lands, though referring to shock corn as passing under the transfer, *held* not to contemplate that standing and ungathered corn should be considered as personalty, and hence it remained realty, and passed under a general warranty deed, although not mentioned in the contract or deed.

Appeal from Dade County Circuit Court.—*Hon. B. G. Thurman*, Judge.

REVERSED AND REMANDED.

*S. A. Payne* and *O. E. Gorman* for appellant.

Annual crops, so partake of the realty that they pass with a grant of the land unless they are expressly reserved, and a warranty deed carries with it a crop of standing corn. McIlvaine v. Harris, 20 Mo. 457; Cantrell v. Crane, 161 Mo. App. 308; Farris v. Hamilton, 144 Mo. App. 177; Tillman v. Bungenstock, 185 Mo. App. 68; Hill v. Brothers, 217 S. W. 581.

*William B. Skinner* for respondent.

(1) It is the duty of courts to construe and declare the legal effect of written contracts. Oehler v. Fruit Co., 162 Mo. App. 446; Hahn v. Cotton, 136 Mo. 216. (2) A written contract should be read in the light of surrounding facts and circumstances, in order the more fully to understand and explain the intention of the parties, not to contradict and vary it, but to ascertain the real meaning of the language used in it. Laclede Construction Co. v. Tie Co., 185 Mo. 62; Carter v. Foster, 145 Mo. 392; McDaniel v. Railroad Co., 165 Mo. App. 690; Power Co. v. Independence, 188 Mo. App. 159-160. (3) The expression in a contract of one or more things of a class implies the exclusion of all not expressed, although all would have been implied had none been expressed. *Expressio unius est exclusio alterius*. 13 Corpus Juris, page 537, paragraph 500; Miller v. Wagonhauser, 18 Mo. App. 11; Meyers v. Wood, 173 Mo. App. 564; County of Johnson v. Wood, 84 Mo. 489. (4) "There is a general rule of construction applicable to writings, constitutions, statutes, contracts and charters public or private and even to ordinary conversations, that general and unlimited terms are restrained

and limited by particular recitals when used in connection with them.'' Everett v. Marston, 186 Mo. 604; Dart v. Bogley, 110 Mo. 54; Miller v. Wagenhauser, 18 Mo. App. 14. (5) Courts will take judicial notice within their territorial jurisdiction of the season of the year in which such cereals as corn, wheat and oats usually mature and are harvested. Manufacturing Co. v. Cunningham, 73 Mo. App. 379. (6) Where the contract embraces other undertakings in addition to the conveyance of real estate, the contract is not to be classed as a real estate undertaking and the delivery of the deed cannot affect the validity of the original contract nor prevent the execution of other executory acts of equal dignity. Wilson v. Wilson, 115 Mo. App. 641; Davis v. Cramer, 188 Mo. App. 718. (7) It is now well established, both in England and in this country, that annual crops, crops raised by yearly labor and cultivation, or *fructus industriales,* are to be regarded as personal chattels, independent of and distinct from the land, capable of being sold by oral contract, and this without regard to whether the crops are growing, or having matured, have ceased to derive any nutriment from the ground. Turner v. Morris, 142 Mo. App. 60; Grath v. Caldwell, 72 Mo. 627.; Davis v. Cramer, 188 Mo. App 722; Lead Co. v. White, 106 Mo. App. 222; Stafford v. Spratt, 93 Mo. App. 631. (8) While the rule is that growing crops are a part of the freehold and pass by deed with the land, the rule does not apply where a reservation of possession in favor of a tenant is made and grantee does not get possession of land until after maturity of crop. Farris v. Hamilton, 144 Mo. 177; Davis v. Cramer, 188 Mo. App. 722. (9) A party in possession of land at the time crops are planted and until they are matured and severed has the right thereto against one who in the meantime has acquired the legal title to the land, but not the possession thereof. Edwards v. Eveler, 84 Mo. App. 405.

FARRINGTON, J.—This suit grows out of a sale of some land and personal property, the plaintiff being the vendee and the defendant the vendor in such sale. There were several counts in the petition, all of which have been disposed of and are not before us for review except one relating to a claim for damages for $2200, wherein it is alleged that the plaintiff was the owner of certain land and a growing crop of corn thereon on the 11th day of October, 1917, and that while such owner the defendant, wrongfully and without the consent and against the will of said plaintiff, harvested said corn crop and appropriated the same to his use to plaintiff's damage. The trial court sustained a demurrer to the evidence as to this count, the action of which is assigned as error.

The contract entered into, between the parties is as follows:

"This contract made and entered into on this 10th day of October, A. D. 1917, by and between H. H. Hayward of Greenfield, Missouri, party of the first part, and A. W. Poindexter of Everton, Missouri, party of the second part, to-wit:

The parties hereto have this day agreed between each other to sell and exchange certain property here within described on the following terms and conditions set out.

First party has this day sold and conveyed to second party and agrees to give perfect abstract, title and warranty deed to Lots 1, 2, in Block 5, in original plat of Greenfield, Dade County, Mo., known as the Washington Hotel property, together with all personal property therein and one Overland car No. 75 Model, all belonging to said first party except one piano and one mattress.

First party is to fulfill contract to this date with tenant in hotel and second party to fulfill same from this date on, which rent is to be $60 sixty dollars per month instead of $50 fifty dollars per month. The above described property is to be conveyed subject to two incumbrances, one for $5000 to Martha A. McGee due Feb. 25, 1920, at 7 per cent. interest, and one for $3000 to W. O. Russell at 5 per cent. interest due Feb. 23, 1920, which second party agrees to pay.

Second party has this day sold and conveyed to the first party 270 acres of land known as the Holman farm located in Section 5, of Township 31 of Range 25, of Dade County, Mo. subject to an incumbrance of $5500 at 7 per cent. interest due October 18, 1920, in favor of the Walton Trust Company, second party furnishes perfect abstract title and warranty died together with two mules, John and Pete, three cows, two calves on farm, one disc harrow, one steel harrow, two riding cultivators, one heating stove and low wheel wagon on other farm, one buggy, one post mall and crowbar, one strawstack and 108 shocks of fodder, all ensilage two turning plows, one riding plow, one set of wagon harness.

First party is to give second party mortage back on farm for $2500 due Feb. 23, 1920, with interest at 6½ per cent. payable annually.

Each party is to pay all taxes due in 1917 on the above described properties and each party is to pay taxes on his own property hereafter.

Second party is to fulfill contract with tenant on farm to this date and the first party hereafter.

Each party is to give possession of property herein described according to this contract on the 11th day of October, 1917.

This contract is to be made in triplicate form, one copy is to be held by H. H. Hayward, one copy by A. W. Poindexter, and one copy is to remain in the bank of Everton, Mo., until completion of deal between said above mentioned parties.

The deed is to be held in escrow in the Bank of Everton until the above contract is fulfilled."

A general warranty deed was made to the land described in the foregoing contract on the 11th day of October, 1917, describing the lands conveyed and in no way excepting or reserving any rights concerning any growing or unsevered crops on the land. The evidence shows that on this day there was standing, unsevered, a field of corn. The farm was in the actual possession of a tenant to whom the defendant here had rented the place with an agreement as to rent that defendant was to have one-half of the corn

raised on the place. Several weeks after this contract had been entered into and the trade made, and the corn gathered off of the stalks by the tenant, the defendant went to the farm and hauled his part away. The evidence also shows that the defendant had purchased the tenant's part of the crop. There is no controversy here concerning the rights as to the tenant's part of the crop, but the real controversy is to whom, under the contract and warranty deed which were made on the same day, does the rent corn belong. It is the contention of appellant that that part of the rent corn which was on the stalk and unsevered on the land on October 11, 1917, when the contract for the sale of the land and certain personal property was entered into and the warranty deed was executed, became his property, while the respondent contends that this rent corn claimed by the plaintiff was a matured crop, that it was personal property that did not pass under the warranty deed, and that all of the personal property intended under their agreement to pass was enumerated and set forth in the contract hereinbefore set out. It is further urged by respondent in oral argument that the corn being in the possession of the tenant at the time this contract and warranty deed were made, and not in the possession of the vendor, nor coming into the actual possession of the vendee, the same tenant continuing under the vendee by the terms of the contract, was not such a crop as would pass by a general warranty deed to the land.

The views of the trial court are set forth in the abstract before us, in which he, in deciding to sustain the demurrer to this count of plaintiff's petition, says:

"Gentlemen, the view I take of this case, my idea about it is, that the annual crops are personal property; a conveyance by warranty deed, during the growing of the crop, while it receives sustenance from the ground, passes with realty. And as to mature crops, it is questionable whether mature crops pass or not.

The testimony is not entirely plain as to whether this crop has matured, although, a few days after this sale the corn is being gathered. But, aside from that,

there is a feature of this contract which counsel has 'not argued. I take this to be the law; that if it was personal property such as might be sold or transferred as personalty, the parties had an absolute right to make any contract they saw proper about the sale and disposition of it; and such contract, if made, would not be affected by the warranty deed at all.

Now, in this written contract here, the second party —that is the defendant in this case—sells this real estate, and he sells a lot of personal property, and, in addition thereto he adds this, "the straw stack and 108 shocks of fodder" going into the question of the personal property as to be conveyed in this transaction. If that is true, it is fairly inferable that the rent corn was not intended to be conveyed by this contract; and that is the holding of the court, that under this testimony the plaintiff is not entitled to recover as to the first and second counts in the petition.

The demurrer will be overruled as to the third count as the testimony as to the third count may be questionable as to what representations were made and what the real plans were. That will be the ruling of the court.

The theory that the court has, that the naming of certain personal property, the feed and hay upon the premises, excludes what is not named, as understood by the parties."

The foregoing clearly sets forth the theory upon which the trial court arrived at the judgment in this case, and we are of the opinion that such views are out of harmony with the law governing such transactions in this State.

The basic question to be determined in the case, as between vendor and vendee, is does a warranty deed to a piece of land, without more, carry with it the title to crops which are standing on said ground and which have not been severed or harvested? From our investigation we have found no case in Missouri where the

decision turned upon the question of whether the crop was still growing or was a ripe and matured crop yet unsevered from the land. The courts, in discussing this question from the various angles at which it has arisen, have used the words "growing crops, standing crops, harvested and severed crops;" and as we read the cases they turn upon other considerations entering into the transactions rather than on the question of whether they are growing or matured.

The general weight of authority and the law of this State undoubtedly is that a standing crop on a piece of land which is conveyed by general warranty deed, without exception or reservation therein, or without exception or reservation made in a contemporaneous contract concerning the sale of the land, goes to the vendee unless there is evidence that the crop had actually been severed from the soil before the transfer, or evidence from which the court could find that the parties had treated the crops as severed from the land; or, in other words, evidence from which the court could find that there had been a constructive a severance.

1 Washburn (6 Ed.), sec. 12, points out the law in this wise: "At common law, and generally in this country, all annual crops, irrespective of their state of maturity, whether planted by a tenant or by the owner of the soil, may be levied on as personal property; but in Massachusetts and Iowa execution levies are restricted to mature crops. As between grantor and grantee of the land, crops planted by the vendor are regarded as realty, and pass to the grantee unless specially reserved."

1 Tiffany on the Modern Law of Real Property, sec. 226, lays down the rule as follows: "On the sale of land, or on its conveyance, either absolutely or by way of mortgage, vegetable growths thereon pass with the land to the vendee or grantee, this being true of annual crops, as well as of trees or shrubbery," and in the footnote cites as an authority therefor Reed v.

Swan, 133 Mo. 100, 34 S. W. 483, to which we will make later reference.

2 Devlin on Real Estate (3 Ed.), sec. 980b, announces that, "A deed will convey growing crops produced by annual planting and cultivation as a part of the real estate unless a reservation is made of them in the deed or in some other writing executed simultaneously with it." And section 980c announces a rule based upon a number of cases, including the case of McIlvaine v. Harris, 20 Mo. 457, that the rule announced in many cases is that it cannot be shown by parole that the grantor reserved the growing crops upon the land conveyed. This author also cites authorities holding to the opposite view, one of which is Grabow v. McCracken, 23 Okla. L. R. S. (N. S.) 1218, 102 Pac. 84. A case cited and relied on by the respondent in this cause attached to that case in the L. R. A. Series will be found a valuable note on this question.

Tiedeman on Real Property (3 Ed.), sec. 7, announces that if growing crops are planted by the owner of the soil they form a part of the realty.

We find in 12 Cyc., pp. 977, 978, the following: "According to the great weight of authority crops so far partake the nature of realty that in the absence of reservation or exception they pass by a sale or conveyance of the land as appurtenant thereto, whether unripe or matured, so long as there has not been a severance, actual or constructive, of such crops from the land."

In 17 Corpus Juris, 379, we find that growing crops having in some cases been held to be personal property and in others to be realty, the classification being made to depend in some instances on severance, actual and constructive, and in others on maturity. No cases are cited from Missouri on the latter condition but a number are cited on the question of severance. On page 381, we find that the ownership of realty carries with it as an incident thereto the prima-facie presumption of the ownership of the annually sown crops, a presumption

which is not conclusive but one that can be rebutted by showing that the owner of land in parting with the use of it to another, made such conditions and reservations in relation to the land itself or to the products growing on it as he chose. [See 8 Amer. & Eng. Ency. of Law (2 Ed.), pp. 303, 304, 305 and 306.] On page 306, under sub-title b, it is shown that crops will pass with realty though severed by parole in the great number of states, among which Missouri numbers. On page 307 are given the states holding to a contrary view. [See 8 R. C. L., 371, 372, 373.]

In the case of McIlvaine v. Harris, 20 Mo. 458, it is held that where a deed is executed for land with a growing crop of wheat upon it, parole evidence is inadmissible to show that the wheat was reserved to the grantor, and afterwards, before harvested, verbally sold to the grantee; this being an interest in land within the Statute of Frauds. It is claimed by respondent that the ruling there is no longer the law of Missouri because of what was said by Judge SHERWOOD in the case of Grath v. Caldwell, 72 Mo. 622, where, on page 627, he said: that annual crops raised by yearly labor and cultivation, or *fructus industriales*, are to be regarded as personal chattels, independent of and distinct from the land. If this language were used in a case where there was a contest such as this, between vendor and vendee, no reservation or exceptions having been made by the vendor, it could be relied upon by respondent as an authority; but there the question was whether a growing crop is capable of being sold by oral contract without regard to whether the crops were growing, or having matured ceased to derive any nutriment from the soil. This does announce the law as we understand it in Missouri to be that the owner of a growing crop may sell that crop by an oral contract if he so desires and good title will pass as between him and his purchaser, and the reason is that because of the character of the crops and the industry that has been expended on it, the owner, if he desires, may sever it from the land and make personalty of it. That question fails to touch the one before us for decision,

which is that in the absence of any such severance ever having taken place, or reservation or exception in the warranty deed, will a general warranty deed carry and convey title to the growing crops? On the latter question the 20 Missouri has in no wise been interfered with by the Supreme Court, as it is cited as an authority in the case of Reed v. Swan, 133 Mo. 100, l. c. 106, 34 S. W. 483, and Hayden v. Burkemper, 101 Mo. 644, l. c. 647, 14 S. W. 767. [See, also Same case, 40 Mo. App. 346.]

The rule announcing that crops pass with a deed to the land in the absence of actual or constructive severance, either by the acts of the parties or by contemporaneous contracts, or by exception and reservation in the instrument conveying the land, is the well recognized rule in this State in a large line of authorities. [See Wallace v. Cherry, 32 Mo. App. 436; Watson v. Menteer, 59 Mo. App. 387; Salmon v. Fewell, 17 Mo. App. 118; Hill v. Brothers, 217 S. W. 581; Fowler v. Carr, 63 Mo. App. 486; Cantrell v. Crane, 161 Mo. App. 308, 143 S. W. 837; Citizens State Bank v. Knott, 199 Mo. App. 90, 202 S. W. 278.]

The earliest case we find touching this question at all is that of Boyer v. Boyer, 5 Mo. 335, which holds that where A had sown a crop of wheat on land a few days after B had entered it, A could not maintain trover against B. who gathered the crop and held it. In that case the owner of the land gathered and got possession of the product. That case does not seem to be in conflict with the case of Jenkins v. McCoy, 50 Mo. 348; Adams v. Leip, 71 Mo. 597; Morgner v. Biggs, 46 Mo. 65.

What is said in Harris v. Turner et al., 46 Mo. 439, is in an unlawful detainer suit.

In McAllister v. Lawler, 32 Mo. App. 91, and Edwards v. Eveler, 84 Mo. App. 405, where the question arose between the landowner and a trespasser who had planted the crop and harvested it, the trespasser having gotten possession of the harvested crop, it was held that the landowner could not recover it by replevin or trover; his action, if any, would be one for damages for trespass, and what is said in these last cases seems to have sometimes been confusing.

The cases of Glass v. Blazer, 91 Mo. App. 564, Wimp v. Early, 104 Mo. App. 85, 78 S. W. 343; Swafford v. Spratt, 93 Mo. App. 631, merely follow the ruling of Grath v. Caldwell, 72 Mo. 622, which holds that growing crops are subject to being transferred by parole. Of like effect is Smock v. Smock, 37 Mo. App. 56.

The case of Lead & Smelting Company v. White, 106 Mo. App. l. c. 234, 235, 80 S. W. 356, merely reiterates the rule that the parties may treat growing crops as personalty.

Appellant cites the case of Holt v. Holt, 57 Mo. App. 272. This case is out of harmony with the law of Missouri, and an intimation thereof will be found in the opinion on page 275, referring to Hayden v. Burkemper, 101 Mo. 644. If it is out of line, that court has certainly receded from the position there taken in the recent case of Tillman v. Bungenstock, 185 Mo. App. 66, 171 S. W. 938. On page 68 the court holds, that a deed without reserve conveyed the vendor's interest in the land and that this will include his interest in the crop, citing a number of cases. [See, also, holding to the same effect by the same court, Culverhouse v. Worts, 32 Mo. App. 419.]

In Reed v. Swan, 133 Mo. 100, 34 S. W. 483, it is held that whether growing crops are considered personalty or realty, it is a rule asserted by the great weight of authority that they are so incidental to the realty that they pass with a grant of the land unless they are expressly reserved.

Some of the cases herein cited show that prior to the passage of section 2234, Revised Statutes of 1919, the crop grown on land by a tenant was lost to him and his landlord under the foreclosure of the mortgage which had been given on the land to secure an indebtedness prior to the planting of the crop by the tenant, and so consistently have our courts held that crops on land are a part of the land and will pass with it unless there had been a severance, constructive or actual, or a reser

vation or exception, that GOODE, J., in the case of Nichols v. Lappin, 105 Mo. App. 401, 79 S. W. 995, expresses doubt about the rights of a tenant under this section of the statute, where the foreclosure was under a judicial decree.

In the case of Davis v. Cramer, 188 Mo. App. 718, 176 S. W. 468, it was clearly shown that there was a severance of the crop from the land by contract. In the case of Turner v. Morris, 142 Mo. App. 60, 125 S. W. 238, it appears in the opinion that it was admitted that there had been a severance, and the contest in that case was over the proportion of the severance rather than there had or had not been one.

In Farris v. Hamilton, 144 Mo. App. 177, 129 S. W. 256, the court held that ordinarily crops will pass by a deed to the land, but held in that particular case that the recital in the deed that it was made subject to a lease which did not expire until long after the crops then growing would have been matured and rotted in the field and that the purchaser would not be in possession until long after that time, created between the parties some evidence that the parties had in their dealings severed the crop from the land, thus making it personalty.

Our attention has been called to the case of Meffert v. Dyer, 107 Mo. App. 462, 81 S. W. 643, wherein the court cited an Iowa case with approval, which held that grain which had matured and was ready for harvest possesses the character of personal chattels and is not to be regarded as a part of the realty; that was merely an *obiter* in the opinion as the case went off on an entirely different proposition.

We are not unmindful of the fact that courts, in dealing with questions of the measure of damages and the best way to get at the damages, have treated matured crops and indeed substantial buildings erected upon land as personalty so far a instructing the jury on the manner of arriving at the proper damage. [See Doty v.

Railroad, 136 Mo. App. 254, 116 S. W. 1126; Matthews
v. Railroad, 142 Mo. 645, 44 S. W. 802.] Expressions
used by the court in dealing with that character of case
could certainly not be used as an authority to determine
the question arising here between vendor and vendee
in a deed.

The trial court in holding that the contract cover-
ing specifically certain personal property in this sale,
when properly construed, must necessarily exclude all
other personal property owned by the vendor on the
place, and holding that this corn crop, ungathered and
unsevered from the land, was personal property, ruled
against the plaintiff. If this contract has any bearing
on the question before us, in our judgment it tends to
show that the parties did not treat this corn crop, sued
for here, as personalty, and this because the law as we
have viewed it is that a standing crop may be treated
by the vendor and vendee as either personalty or realty.
If there is evidence that they have treated it as per-
sonalty, the courts will so declare it, but where there is
no evidence that they treated it as personalty, it will
remain, under the law, as realty and pass with the deed.

Now, in this case, the parties did undertake to set
out the personalty that would pass under the contract
they made, and although they had the question of corn
in their minds, for they did transfer the shock corn,
which was personalty, they nowhere mentioned the
standing and ungathered corn. This must clearly indi-
cate that they were not treating this standing and un-
gathered corn as personalty hence it remained realty,
and as we view their intention to be, so considering it
realty, it would and did pass under the general warranty
deed executed without reservation or exception.

We must, therefore, hold that the trial court com-
mitted error in sustaining the demurrer to plaintiff's
evidence on the first count of the petition, and for that
reason the judgment is reversed and the cause remand-
ed.

*Cox, P. J.,* and *Bradley, J.,* concur.