BANK OF COMMERCE & TRUST COMPANY *v.* CITY OF MEM-
PHIS, *et al.**

(*Nashville.*  December Term, 1926.)

Opinion filed February 12, 1927.

1. **MORTGAGE.**    **Possession of mortgaged property.    Contract.**
In jurisdictions where the mortgagor is entitled to possession by
   law, it is competent for the parties to the mortgage to make
   an arrangement as to possession, other than that which the law
   would determine in the absence of an agreement.   (Post, p. 66.)
Citing: Morgan Bros. v. Dayton Coal & Iron Co., Limited, et al.,
   134 Tenn., 228, 279; Leiberman, Loveman & Cohn v. Knight, 153
   Tenn., 268; 41 C. J. 610; 19 R. C. L. 317.

2. **SAME.   Income.   Rents and profits.   Conveyed in trust.**
The income, rents and profits, being legally conveyed in trust,
   the parties may stipulate for possession thereof, by the mort-
   gagee, or trustee; although otherwise he would not have been
   entitled to such possession until default.   (Post, p. 66.)

3. **SAME.   Preservation of income.   Application thereof.**
When it is required under the term of a trust deed, that all funds
   arising out of the net income of mortgaged property, shall be
   kept with a designated depository, to be applied to no other use,
   than for the benefit of the property in a manner provided; or for
   the payment of the bonds and coupons secured, **held** a valid pro-
   vision for the benefit of the beneficiary, and that a trustee is en-
   titled to hold such revenue, and see that same is devoted only to
   the specified purpose; it appearing that the depository, was a
   safe one for the fund.   (Post, p. 67.)

4. **TRUST.   Trustee.   Jurisdiction of equity over same.**
The jurisdiction of equity over all trusts is broad, and the court
   will not tolerate a course of conduct, prejudicial to the mort-

gagor, of no benefit to the beneficiary which merely tends to the private gain of the trustee. (Post, p. 68.)

---

*Headnotes 1. Mortgages, 41 C. J., sections 604, 605; 2. Mortgages, 41 C. J., section 578; 3. Mortgages, 41 C. J., section 605; 4. Waters, 40 Cyc., p. 770 (Anno.); 5. Constitutional Law, 12 C. J., section 423; 6. Waters, 40 Cyc., p. 770 (Anno.).

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County to Court of Appeals and by Certiorari to Supreme Court.— Hon. F. H. Heiskell, Chancellor.

Wilson, Gates & Armstrong, for plaintiff.

E. B. Klewer and Riddick & Riddick, for defendant.

Mr. Justice Green delivered the opinion of the Court.

On May 1, 1903, the City of Memphis executed a trust deed to secure an issue of $3,500,000 of water works bonds. The bonds matured at the rate of $50,000 per year beginning May 1, 1904. All bonds have been paid as they matured. The income from the water works has proven larger than anticipated so that the city has been able to pay all interest as it accrued and to pay off more than $1,000,000 of the bonds—taking some of them up before they fell due. The bonds now bear such a premium, it is no longer profitable for the city to purchase them before maturity.

Just prior to the filing of the bill in this case, the city had accumulated out of the income from the water works more than $500,000. This sum of money was on deposit

with complainant, the Bank of Commerce & Trust Co., at three per cent interest. The City drew out of said deposit $40,000 which it placed with four other banks in Memphis at four per cent interest. It attempted to draw out $10,000 more by check to place with another bank in Memphis.

The complainant bank refused to pay this last check and filed the bill herein averring that the city was required under the terms of the trust deed aforesaid to keep all funds arising out of the income of the water works on deposit with complainant bank. The city controverted this position and the Chancellor dismissed the bill. The Court of Appeals reversed the decree of the Chancellor and sustained the bill. We have granted the writ of *certiorari*. Under the terms of the trust deed the City of Memphis conveyed the water works plant, franchises and properties, and "all extensions, accretions, revenues, income and profits thereof."

The trust deed contains two other clauses as follows:

"Until default is made in the payment of the interest or principal of the bonds above mentioned, secured hereby, or in the payment of the interest or principal of the bonds of the Artesian Water Company assumed by the party of the first part, or in the performance of the covenants and agreements herein set forth, the City of Memphis, party of the first part, is to have full possession, control or management of the property, privileges and franchises herein mentioned, and all the income, rents and profits thereof, and shall have the right from time to time to dispose of such parts and portions of the equipment and fixtures at any time held and used by it in connection with such properties as may become unfit for use, provided always that the same·be replaced by new

155 Tenn.—5.

equipment or fixtures of at least equal value, which shall then be subjected to the operation of this deed.

"It is further covenanted, agreed and understood that during the existence of this trust, all of' the proceeds of bonds sold under the authority of this instrument, and all water rates and rentals, income and revenue of the water plant and property described in and conveyed by this instrument, and from other sources of income derived from said property, shall be deposited as received or collected in the hands of the Memphis Trust Company, to be drawn out only upon the order of the duly author-ized officer of the city and pursuant to law, ordinance and this indenture, and shall be applied to no other use or purpose than for the use and benefit of the said water plant property, in the manner provided by law and ordinance and by this indenture, or for the payment of the bonds and coupons hereby secured."

The provisions of the first paragraph above quoted really secure to the city of Memphis no rights that it would not have enjoyed under the law, at least in so far as the "income, rents and profits" of the property are concerned. Even though a mortgage includes the income, rents and profits of a going concern, if it is contemplated that the mortgagor is to remain in possession of the property and operate it, a conveyance including income, rents and profits is construed not to be effective until default. *Morgan Bros.* v. *Dayton Coal & Iron Co., Limited, et al.,* 134 Tenn., 228, 279. This is certainly true unless the security of the mortgagee is impaired by the mortgagor's use of the income, rents and profits. *Leiberman, Loveman & Cohn* v. *Knight,* 153 Tenn., 268.

In jurisdictions where the mortgagor is entitled to possession by law, it is competent for the parties to the mortgage to make an arrangement as to possession other

than that which the law would determine in the absence of an agreement. 41 C. J., 610, 19 R. C. L., 317.

It follows, therefore—the income, rents and profits being legally conveyed in trust—that the parties may stipulate for possession thereof by the mortgagee or trustee, although otherwise, he would not have been entitled to such possession until default.

It seems to us that the parties to the mortgage before us have done this very thing in the second paragraph above quoted. It is there provided that the income and revenues of the water plant shall be deposited as received in the hands of the Memphis Trust Company (the predecessor of complainant), to be drawn out only by the authorized officer of the city and to be ''applied to no other use or purpose than for the use and benefit of the said water plant property.''

This is a valid provision for the benefit of the bondholders. It confers upon the trustee the right to possession of the revenues of the water plant, except that the city may draw upon the fund for the use and benefit of the water plant property, and for the payment of the bonds and coupons secured by the trust deed. The trustee, under this provision, for the security of the trust, has the right to hold the revenues of the water plant and to see that such revenues are only devoted to purposes specified in the trust deed.

In our opinion the city is not entitled, upon the showing here made, to remove this fund, devoted to the purposes aforesaid, from the custody of the trustee agreed on by the parties, and deposit the fund in other banks, lend it to other banks, or otherwise invest it.

Under the terms of the contract, the city can only draw upon this fund in the hands of the trustee ''for the use and benefit of the said water plant property,''

"or for the payment of the bonds and coupons hereby secured." We cannot agree that the withdrawal of a portion of this fund and a loan thereof to other banks or an investment thereof, even though a higher rate of interest upon the fund is thereby obtained, is an application of the fund to the use and benefit of the *water plant property*. Such an arrangement might profit the city or the Board of Water Commissioners, but it would be of remote benefit, if any at all, to the water plant property. Such an arrangement might result in the loss of the portion of the fund withdrawn. At any rate the terms of the trust deed forbid such an arrangement and the trustee is within its rights in opposing the same.

Whether or not any bondholder will be prejudiced by the plan the city contemplates is not a question now before us. It certainly does not appear that any bondholder will be prejudiced by compliance with the terms of the trust deed, and the trustee, representing the bondholders is entitled to stand on the contract under such circumstances as are so far disclosed.

It appears in the case that prior to this suit the city had been receiving from complainant bank three per cent on the amount of this deposit. Upon the motion for dissolution of the injunction herein, the complainant bank represented that it was w'lling to pay four per cent on the deposit upon all such funds as were left with it for twelve months or more. This was the arrangement the city was proposing to make with other banks. The solvency of the complainant bank is not questioned.

A municipal corporation, an arm of the State, cannot of course barter away its police power. It may be suggested that if it should at any time develop that the complainant bank was not a safe depository for the water works fund, or if the complainant bank insisted on

retaining this fund pending its use upon terms disadvantageous to the city, all things considered, the city might in the exercise of its police power seek a different arrangement, consistent with the security of the bondholders. No such a situation, however, is here presented and no such questions arise on this record.

In addition to this, the trustee was selected as such primarily to protect the interests of the bondholders and of the parties to the instrument. The jurisdiction of equity over all trusts is broad, and the court would scarcely tolerate a course of conduct on the part of the trustee, prejudicial to the city, of no benefit to the bondholders, which merely tended to the private gain of the trustee. The trustee, however, offers now to hold this unexpected surplus on the same terms upon which the city is proposing to deposit it with other banks. Upon these facts, the financial responsibility of the trustee being admitted, we see no ground for interference.

The decree of the Court of Appeals is affirmed.