E. R. LINGERFELT *v.* CHARLES GIBSON *et al.*

(*Knoxville,* September Term, 1930.)

Opinion filed November 28, 1930.

D. SULLINS STUART, for complainant, appellant.

MAYFIELD & MAYFIELD, for defendant, appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a contest over a growing crop between the purchaser of land sold under a mortgage and the tenant of the mortgagor. The tenant rented the land on February 5, 1929, for a period of one year, the same being a farm containing over five hundred acres, and planted it in corn. The consideration of the lease was $2500, for which the tenant executed his five notes of $500 each. At the time the bill was filed one of the notes had been paid and the bill averred that the others had come into the hands of innocent purchasers. The mortgagor in possession who leased to the tenant made default and the land was advertised and sold under the mortgage on July 10, 1929. The purchaser demanded possession of the land, including the crop, and was proposing to enter thereupon. The bill herein was filed by the tenant in September, 1929, asserting his right to the crop and seeking an injunction against the purchaser to restrain him from interfering with the tenant in gathering and removing the crop.

The chancellor dismissed the bill and the tenant appealed to this court. While the exact question does not seem heretofore to have arisen in this State, we think the principles laid down in previous decisions of this court compel an affirmance of the chancellor's decree.

In *Henshaw* v. *Wells,* 28 Tenn. (9 Humph.), 568, a controversy arose between the mortgagee of a house and lot in Nashville and a tenant of the mortgagor, the tenant having executed rent notes which, as here, had come into the hands of innocent purchasers for value. The court declared the rights of the parties in these words:

"Although the legal estate is vested in the mortgagee, yet there is a tacit assent that the mortgageor shall retain the possession until default of payment, and while he thus retains possession he is not bound to account for

rent. But the mortgagee may, at any time, and before default, if he chooses, put the mortgageor out of possession by ejectment, or other proper suit. 4 Kent's Com., 155. When the mortgageor is left in possession, the true inference to be drawn is that he shall possess the premises at will, in the strictest sense; and, therefore, he is not entitled to notice to quit. 1 Pow. on Mort., 160.

"If the mortgageor lease the estate while he is permitted to retain the possession, the tenant can only enjoy such rights as the mortgageor possessed; for, says Chancellor KENT (4 Com., 157), 'every person taking under him takes subject to all the rights of the mortgagee, unimpaired and unaffected.' This doctrine is much more reasonable in this country than it is in England, for it is the duty there of a party who wishes to take a lease to enquire after and examine the title deeds; his negligence is much greater here, if he fail to acquire a knowledge of the mortgage, because an examination of the register's books would afford the desired information. But whether the tenant of the mortgageor has actual knowledge of the mortgage or not can make no difference; the registration is constructive notice to him, and he stands in exactly the situation of the mortgageor; for a mortgageor has no power, express or implied, to let leases not subject to every circumstance of the mortgagee. 1 Pow. on Mort., 60; Doug. 21; 4 Kent's Com., 156. Therefore although, if the mortgagee permits the lessee to enjoy his lease, the mortgageor may be considered, in some sort, a trustee for the mortgagee, yet the mortgagee may at any time countermand the implied authority by giving notice to the tenant not to pay rent to the mortgageor any longer. 1 Pow. on Mort., 158. We think, from these principles thus supported by the authorities,

it is clear that Wells, the mortgageor, had no right to make a lease from year to year that would be obligatory upon the mortgagee; and that Butler, the tenant, paid the rent in advance in his own wrong. He must be held to have had notice of the mortgage, and consequently to have had a knowledge of the rights of the mortgagee, and that it was in the power of the mortgagee at any time to require the rent to be paid to him; and, therefore, that the mortgageor had no right to receive the rent in advance. It is the tenant's folly and misfortune that he executed negotiable securities for the rent agreed on. He may thereby be required to pay the rent for this property both to the mortgageor and mortgagee; but we cannot, on account of the hardship of the case, deprive the mortgagee of his unquestionable rights.''

*Henshaw* v. *Wells* was followed in *Williams* v. *Bartlett,* 72 Tenn. (4 Lea), 620; *Bank* v. *Ewing,* 80 Tenn. (12 Lea), 598, and *Reeves* v. *John,* 95 Tenn., 434. The same ruling as to the mortgagee's rights was made in *Carter* v. *Taylor,* 40 Tenn. (3 Head), 30, and *Brier Hill Collieries* v. *Gernt,* 131 Tenn., 542.

*Lieberman, Loveman & Cohn* v. *Knight,* 153 Tenn., 268, dealt with the right of a mortgagee to reach timber severed from the land and to recover its value from those to whom it had been sold by the mortgagor in possession. It was held that the mortgagee had such right only if the severance impaired his security, it not appearing that the note secured by the mortgage there was due nor that there had been any default otherwise on the part of the mortgagor. While the court notes that there has been, as a matter of practice, some relaxation in the rules laid down in the cases just cited concerning the rights of the mortgagee, there is certainly nothing in

*Lieberman, Loveman & Cohn* v. *Knight* that would, after default and foreclosure, authorize any severance from the land in the hands of the purchaser by the mortgagor or by his tenant.

*Bank of Commerce* v. *Memphis,* 155 Tenn., 63, and *Morgan Bros.* v. *Dayton Coal & Iron Co.,* 134 Tenn., 228, relied on by the appellant, held that mortgages which included the income, rents, and profits of going concerns, where the mortgagor was to remain in possession, would be construed to be effective as to such income, rents and profits only after default.

In *Langford* v. *Hudson,* 146 Tenn., 309, after a review of our decisions, the court concluded that crops, being appurtenant to the land, partook of the nature of realty so that a sale of the land, whether private or judicial, carried with it growing crops, unless they were specially excepted from the conveyance. Accordingly it was held that a sale under a vendor's lien retained in a registered deed, while the crops were attached to and unsevered from the land, passed title to the crops to the purchaser of the land against a mortgage made by the vendee covering said crops.

Such being the rights of the mortgagor and the vendee of land as to crops, it is difficult to see how a tenant of the mortgagor or vendee, when the mortgage or the vendor's lien appeared of record, could have higher rights. It seems that the tenant would stand in his landlord's shoes. It is so held by many courts. *Fischer* v. *Johnson,* 51 Mo. App., 157; *Reed* v. *Swan,* 133 Mo., 100; *Sugden* v. *Beasley,* 9 Ill. App., 71; *Yates* v. *Smith,* 11 Ill. App., 459; *Downard* v. *Groff,* 40 Ia., 597; *Goodwin* v. *Smith,* 49 Kan., 351, 17 L. R. A., 284; *Little* v. *Kennedy,* 71 S. C., 1, 4 Anno. Cas., 68.

A contrary view is taken in *Howell* v. *Schanck,* 24 N. J. L., 89; *Ellison* v. *Darby,* 3 Penn. (Del.), 45; *Cassilly* v. *Rhodes,* 12 Ohio, 88, and *Heavilon* v. *Farmers Bank,* 81 Ind., 249.

Other cases are collected in a Note, L. R. A., 1917C, 45, and in 42 C. J., 250.

Cases reaching the conclusion that the tenant of mortgaged land is entitled to the crop as against the purchaser at a foreclosure sale, as noted in 42 C. J., 250, base that conclusion on "widely differing grounds as, for example, that the mortgagor retains title after executing the mortgage, the mortgagee having only a lien in States following that rule, or that to hold otherwise would defeat the policy of the appraisement statutes, or independently of appraisement broadly on the ground that crops are personal property."

None of these grounds are available for such a conclusion in this jurisdiction.

Referring to the cases supporting what we believe to be the majority rule, and illustrating the reasoning of them all, we quote:

"It is plain that a lessee of the mortgagor under a lease made subsequently to the mortgage, with notice of the terms thereof, without the concurrence of the mortgagee, has no greater right to the crops growing and unsevered than the mortgagor himself would have after condition broken. The rights of the tenant can rise no higher than those of his landlord." *Reed* v. *Swan,* 133 Mo., 100.

"As tenants of . . . the mortgagor, they could have no greater rights as against the purchaser under the deed of trust than their landlord would have had if he had been in possession. The question therefore is not

one between landlord and tenant, but one respecting the rights of a purchaser under a deed of trust against the maker of the deed as to the ownership of the crops on the ground when the title passes. The deed of trust created a lien upon the realty as against the maker of the deed and all persons claiming under him by subsequent grant or demise. In such case the general rule is that 'the purchaser is entitled to the crops growing at the time of the delivery of the deed to him, in preference to the mortgagor or anyone claiming under him, whose claim originated subsequently to the mortgage.' " *Sugden* v. *Beasley,* 9 Ill. App., 71.

It is urged, however, that the tenant here, having planted and tilled this crop, is entitled thereto as emblements. That a tenant is entitled to emblements in this State, under certain circumstances, as at common law, is recognized in our cases. *Turner* v. *Turner,* 132 Tenn., 592; *Hendrixson* v. *Cardwell,* 68 Tenn. (9 Baxt.), 389; *Hawkins* v. *Skeggs's Administrator,* 29 Tenn. (10 Humph.), 31. In the last named case this court said: ". . . whenever an estate in lands is to be determined upon a contingency, if that contingency happen by the act of God, or the adverse party, the tenant, or his representative, as the case may be, is entitled to all growing crops as emblements, but the contrary rule prevails when the contingency happens by the act of the tenant in possession; then it is his own folly to put an end to the estate at a time when there are growing crops upon it, and he cannot complain that he is not permitted to enter afterwards and gather them." The tenant in that case was a widow upon a devise *duranto viduitate.* She married and it was held that her estate in the lands ceased immediately and she lost the emblements.

Although referred to in many cases as a tenant at will, Chancellor Kent points out that this is not strictly accurate, since the mortgagor is not entitled to emblements as tenants at will are. 4 Kent's Com., 456.

It was laid down in the old books that a mortgagee might evict a mortgagor without notice and retain the emblements and if the lease was granted subsequent to the mortgage and without the concurrence of the mortgagee, he might evict the lessee without notice and retain the emblements. *Goodwin* v. *Smith* (Kan.), 17 L. R. A., 284, citing Coote Mortg., 351; 2 Swift Dig., 156; 2 Cruise Dig., 108.

"The reason of this was said by the older writers to be that the lessee was evicted by a title paramount, and the lease of the mortgagor amounted to a disseizin of the mortgagee which rendered the lessee upon entry a wrong-doer. But a sufficient and better reason appears to be that every person who takes under a mortgage takes subject to all the rights of the mortgagee, unimpaired and unaffected. 4 Kent's Com., 157; *McRucker* v. *Hauley,* 16 Johns., 289; *Jackson* v. *Hopkins,* 18 Johns., 487; *Dickinson* v. *Jackson,* 6 Cow., 147." *Goodwin* v. *Smith, supra.*

As heretofore seen, the tenant is not entitled to emblements, if his occupancy is lost by his own act. Since the tenant of the mortgagor stands in the shoes of the latter and claims under the latter, we do not see upon what principle the tenant can claim emblements when his occupancy is lost by the mortgagor's default.

For the reasons stated, the decree of the chancellor is affirmed.