ADOLPH A. SCHMID, TRUSTEE, COMPLAINANT, APPELLANT, *v.* BAUM'S HOME OF FLOWERS, INC., DEFENDANT, APPELLEE.

(*Knoxville,* September Term, 1930.)

Opinion filed April 4, 1931.

440

442

FINKLESTEIN & KERN, for Adolph A. Schmid, Trustee.

CATE, SMITH, TATE & LONG, for Baum's Home of Flowers, Inc.

Donaldson & Montgomery, for East Tenn. Savings Bank.

Green, Webb & Bass, for H. T. Kern, Receiver.

Mr. Justice Swiggart delivered the opinion of the Court.

The appeal of Schmid, trustee, and H. T. Kern, receiver, involves a contest with regard to rent of real estate of a bankrupt, accruing after the date of bankruptcy. Baum's Home of Flowers, the tenant, leased a portion of a business house in Knoxville from Morris Bart, in February, 1925, the contract being evidenced by a written lease providing for a term of fifteen years, beginning July 1, 1925, with monthly rent payable on the first day of each month, in advance. At the date of the lease Bart was the owner of the building, subject only to an express vendor's lien for unpaid purchase money. The lease contract was duly placed on record in the office of Register of Knox County on February 16, 1925.

The bankruptcy of Morris Bart occurred in November, 1928, during the fourth year of the lease. The tenant, at the beginning of each of the previous years, had executed a series of twelve monthly rent notes, for the accommodation of Bart. A similar series of notes covering the fourth rental year was executed by the tenant in April, 1928, and these notes were promptly discounted by Bart with the East Tennessee National Bank, one of the appellees herein. No reference to the execution of notes for installments of rent appears in the recorded lease.

Each of the rent notes for the year beginning July 1, 1928, recited on its face that it was executed for rent for the particular month, and recited that the note would be void in case of a termination of the lease before its due date.

The original complainant, Adolph A. Schmid, trustee, was made trustee in bankruptcy of Morris Bart on November 28, 1928, and thereafter demanded that Baum's Home of Flowers pay rent to him for the months of December to February, inclusive.

On March 1, 1929, the District Court of the United States, in which the bankruptcy estate was being administered, relinquished all claim to any equity in the real estate of the bankrupt; and on or about said date, H. T. Kern was appointed receiver of said property by the Chancery Court of Knox County, in a proceeding styled *Cumberland Trust Company et al.* v. *Morris Bart & Wife,* the nature of which litigation is not fully disclosed on the record before us. H. T. Kern, receiver, demanded that the tenant pay rent to him after said date, March 1, 1929.

Inasmuch as the tenant leased from Morris Bart only a portion of a large business house, the lease contract provided that the owner should furnish heat, water, and elevator service. The cost of furnishing these items was paid by the trustee in bankruptcy from the date of the adjudication in bankruptcy until March 1, 1929, and by the receiver from that date until the end of the rental year, a period of four months.

No effort appears to have been made, either by the trustee in bankruptcy or by the receiver, to interfere with the possession of the tenant during the period covered by the unpaid rent notes. The tenant remained

in possession under his lease contract until June 29, 1929, one day short of the end of the rental year, on which date title to the property passed to Oscar Handley, the purchaser at a sale ordered by the chancery court in a proceeding instituted for the purpose by the holder of the vendor's lien, hereinabove referred to. Thereafter the tenant remained in possession by agreement with Handley.

The ownership and possession of the notes by the bank arose more than four months before the bankruptcy, supported by valuable consideration passing in part at the time. It is not contended that the execution of the notes or their transfer was tainted by actual fraud or fraudulent intent.

The chancellor held that the East Tennessee National Bank, as the owner and possessor of the seven rent notes falling due after the date of the adjudication in bankruptcy, was entitled to collect them from the tenant, and that neither the trustee in bankruptcy nor H. T. Kern, receiver, had any legal or equitable claim for rent, or services rendered, against the said tenant. From his decree, rendered upon an agreed statement of facts, the trustee in bankruptcy and receiver have appealed to this court.

It is contended for the appellants that the several rent notes owned by the East Tennessee National Bank are rendered non-negotiable by their recitations, and that therefore the bank holds these notes only as "assignee subject to the existing equities between the maker, Baum's Home of Flowers, Incorporated, appellee, and Adolph A. Schmid, trustee, appellant." *Ahrens & Ott Mfg. Co.* v. *Moore & Sons,* 131 Tenn., 191, 174 S. W., 270.

446

That the notes in question are not negotiable is sustained by *Hight* v. *McCullough,* 150 Tenn., 117, 263 S. W., 794. It does not follow, however, that there is any error in the decree of the chancellor. The tenant was clearly entitled to retain possession of the leased premises as against the lessor's trustee in bankruptcy. He did retain possession, in full enjoyment of the privileges contracted for, and therefore no equities arose as between the tenant and his lessor. The tenant concedes his liability for the rent, and the question for determination is whether this rent is payable by the tenant to the holder of the notes or to the trustee and receiver.

It is, however, contended for the trustee in bankruptcy that the registered lease contract provided that the rent for each month would be due and payable on the first day of the month, and that payment by the tenant for a year in advance would operate to mislead creditors and persons dealing with the lessor, who might acquire an interest in the property during the year, relying upon the statements in the registered lease. It is insisted therefore that the trustee in bankruptcy would not be bound by an advance payment under such circumstances, and was entitled to the bankrupt's estate subject only to the terms of the lease as recorded.

Execution and delivery of the rent notes by the tenant did not amount to payment in advance. *Columbia Grocery Co.* v. *Marshall,* 131 Tenn., 270, 174 S. W., 1108; *First National Bank* v. *Yowell,* 155 Tenn., 430, 294 S. W., 1101; Tiffany, Landlord and Tenant, vol. 1, p. 1081.

The purchaser of the notes became the assignee of the rent included in the notes. By the execution and delivery of the notes the tenant must be held to have au-

thorized their assignment. *Matheny* v. *Preston Hotel Co.,* 140 Tenn., 41, 46, 203 S. W., 327.

The issue made by the trustee's appeal is, therefore, whether the creditors of the bankrupt are bound by his assignment of his right to receive the rent for the twelve months covered by the notes, the assignment having been executed for value, in good faith, and without fraudulent intent, more than four month before the institution of the bankruptcy proceedings.

Rent accruing to the lessor of real estate under the terms of his lease is said to be incident to the lessor's reversion. It is not a debt within the classification of choses in action, whether evidenced by promissory notes of the lessee or not. This right to future rents is not personal property, and upon the death of the lessor, or owner of the reversion, passes to the heirs at law with the reversion. *Combs* v. *Combs,* 131 Tenn., 66, 173 S. W., 441. Rent is said to be "one of the ten principal incorporeal hereditaments known to the ancient English law." 50 Corpus Juris, p. 758, citing 2 Blackstone Comm., 21.

It is, however, universally recognized that rent is severable from the reversion, and that the owner of the reversion may effect this severance by granting or transfering the rent to another. This may be done either by "indorsement of the rent notes before maturity," or, if there be no such notes, by an assignment of the rent, "as, for example, an order in favor of a third person by the landlord on and accepted by the tenant." *Combs* v. *Combs, supra.*

Whether such severance of rent from reversion is effective against one thereafter acquiring the reversion without notice, either actual or constructive, was not

involved in *Combs* v. *Combs,* supra, and was therefore given no consideration. And in a thorough search of authorities elsewhere we have examined many cases sustaining the right of the owner of the reversion to assign future rents, and only one specifically dealing with the effect of such assignment on a subsequent transfer of the reversion without notice; *Winnissimmet Trust, Inc.,* v. *Libby,* 232 Mass., 491, 122 N. E., 575, to be referred to hereinbelow.

In *Henshaw* v. *Wells,* 28 Tenn. (9 Humph.), 567, the tenant, Wells executed negotiable notes for a year's rent of premises which his landlord had mortgaged prior to the date of the lease. The notes having been promptly negotiated to a holder for value, Wells was required to pay the year's rent to a receiver appointed in a foreclosure suit of the mortgagee, upon plea and proof that the value of the land was insufficient to pay the mortgage debt. The court said: "It is the tenant's folly that he executed negotiable securities for the rent agreed on. He may thereby be required to pay the rent for this property both to the mortgagor and mortgagee." The case is to be distinguished from the case made here by the appeal of the trustee in bankruptcy, in that the mortgagee's claim was not merely to the reversion, subject to the lease, but was to the entire estate of the mortgagor under mortgage placed of record prior to the execution of the lease.

*Ellis* v. *Foster,* 54 Tenn. (7 Heisk.), 131, was a suit to enforce a vendor's lien, the bill asking for an attachment of the land and the rents for the year 1869. The tenants answered that they had given their promissory notes for the year's rent, which notes had been assigned by their lessor to one Briggs. Complainant thereupon dismissed

the attachment as to rents, and a sale of the land to Glass was confirmed at the October term, 1869, the decree reciting that Glass as the purchaser would be entitled to a writ of possession on January 1, 1870. The claim of Glass to the rents for the year, 1869, was urged on the theory that they were not due until after his purchase was confirmed, and that there was no special reservation of the rents in the decree of sale. The court held that Glass was not entitled to the rents because chargeable with notice that the notes given by the tenants had been assigned by the lessor, and did not "understand himself as purchasing the rents with the land." The court said: "The owners of the land, that is Foster and wife (lessors), were not at the time of the sale entitled to the rents, and Glass the vendee at the sale under the decree, by obtaining their title to the land, and taking their place by virtue of his purchase, could not claim a right which his vendees did not themselves have."

The situation of the purchaser in *Ellis* v. *Foster* was complicated by the procedure of the complainants, holders of a vendor's lien antedating the lease of the tenants, with reference to the rents for the year. The decree of the court, recognizing the validity of the assignment as against the purchaser, was clearly based upon the fact that the complainants relinquished any right to the rents involved, of which fact the purchaser had notice at the time of his purchase. The leasehold as well as the reversion was subject to the lien of complainants, as in *Henshaw* v. *Wells, supra,* and as in the recent case of *Lingerfelt* v. *Gibson,* 161 Tenn., 477, 32 S. W. (2d), 1047.

The rule that an assignment of future rents is effective against a subsequent purchaser of the reversion, is stated

in 36 Corpus Juris, 367, 368 (Landlord & Tenant, sections 1212, 1217), and in 16 Ruling Case Law, 914, 918 (Landlord & Tenant, sections 421, 424), without qualification as to the necessity that the purchaser of the reversion be charged with notice, actual or constructive, of the previous assignment of the rents. The cases cited in the notes to the text do not discuss the necessity of notice, other than in the casual manner of *Leonard* v. *Burgess,* 16 Wis., 42.

In *Leonard* v. *Burgess, supra,* cited by this court in *Combs* v. *Combs, supra,* on the proposition that an assignment of rent reserved by lease works a severance of the rent from the reversion, it is said: "If the grantee of the reversion had had no knowledge there had been a severance of the rent, he might not, perhaps, have been bound by it."

Underhill on Landlord and Tenant, vol. 2, sec. 662, cited by this court in *Combs* v. *Combs, supra,* states: "The title of an assignee of future rents to whom they were assigned separately from the reversion is paramount to that of a subsequent purchaser or devisee with knowledge or notice of the reversion from the reversioner, where the assignee of the rents has notified the tenants to pay rent to him only or has properly recorded the assignment under the statute." *Leonard* v. *Burgess, supra,* is the author's authority for the qualification as to "knowledge or notice."

It is, however, correctly observed by Tiffany, Landlord and Tenant, vol. 2, pp. 1111 and 1112, that the question of notice of the severance to the subsequent purchaser of the reversion, can only arise or be material, if the assignment of future rents is within the application of the recording laws of the state. The author says:

"Rent being an interest in land, a conveyance thereof would appear ordinarily to be within the meaning and purpose of the recording laws, and, assuming that such is the case, the subsequent purchaser of the reversion would be affected by the previous transfer of the rent to a purchaser for value, if such transfer were recorded, and, in the absence of notice from other sources, only then. If, however, owing to the fact that the interest in the rent is for a brief period only, or for some other reason, the conveyance thereof is not within the recording law of the particular jurisdiction, the innocent purchaser of the reversion would take subject to the rights of the prior grantee of the rent."

Tiffany, in the work just cited, criticises the disposition of some courts to regard assignments of future rents as transfers of choses in action; and with regard to a general assignment of future rents says: "This should, *prima facie* at least, it would seem, be construed as a transfer of an interest in land, of an 'incorporeal hereditament' as expressed by Blackstone, and an incorporeal hereditament is transferable, by the common-law authorities, only by writing under seal. The question here suggested does not appear to have been judicially discussed."

In *Combs* v. *Combs, supra,* and the cases therein cited, this court has adhered to the rule of the common law that the right to receive future rents, as an incident to the reversion, is an incorporeal hereditament, passing to the heirs at law of the reversion upon his death, under the laws governing the devolution of real estate, notwithstanding the future installments of rent under a lease are evidenced by promissory notes of the lessee held by the lessor as owner of the reversion.

452

The registration laws of this state specify the instruments which "may be registered" (Shannon's Code, sec. 3697; Code of 1858, sec. 2030), and provides: "All of said instruments shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." Shannon's Code, sec. 3749; Code of 1858, sec. 2072.

Included in the enumeration of "said instruments" in section 3697 of Shannon's Code are: "(1) All agreements and bonds for the conveyance of real or personal estate. . . . (4) All deeds for the absolute conveyance of any lands, tenements, or hereditaments, or any estate therein. . . . (8) All mortgages and deed of trust of either real or personal property. . . . (15) Leases for more than three years from the time of making the same." It is elsewhere provided: "Leases for more than three years shall be in writing, and, to be valid against any person other than the lessor, his heirs and devisees, and persons having actual notice thereof, shall be proved and registered as hereinafter provided." Shannon's Code, sec. 3663; Code of 1858, sec. 2002.

█ Since the right to future rents is an incident to an estate in the land, a hereditament, and not a chose in action, the assignment of the right is a conveyance of a hereditament, and within the express language of subsection 4 of section 3697 of Shannon's Code, as above quoted. Such an assignment, if it includes rents to accrue beyond a period of three years from its date, is therefore within the application of section 3749, quoted above, and as to persons other than the parties thereto,

their heirs and representatives, and persons with actual notice, is effective only from the date of its registration.

A contrary conclusion, we think, would be disastrous to the policy and intent of the registration laws. The lease here involved is for a term of fifteen years. Other leases are made for much longer periods, and the existence of a lease providing for a fair rent will often enhance the sale value of the property in the view of investors. To hold that an undisclosed assignment of the rent for such a term is valid against an innocent purchaser of the reversion, as being outside the scope and application of the registration laws, would open the door to fraud in unlimited degree. Instances readily occur to mind in which the rents for the term of a lease, by reason of its length or other considerations, represent the entire value of the reversion, and a conveyance or assignment of the rents would be equivalent to a conveyance of the land itself.

In the case of *Winnissimmet Trust, Inc.,* v. *Libby,* 232 Mass., 491, 122 N. E., 575, referred to above, the Supreme Judicial Court of Massachusetts said that the defendant's requests for rulings raised the question "whether an assignment under seal, of rent to become due under a written lease for a term less than seven years after notice to the lessee, is effectual as against a subsequent purchaser of the lessor's reversion, without notice of the prior assignment." The court held that the rent assigned was not a chose in action, but was "an incorporeal interest in land which can be assigned only by an instrument under seal." Then, after referring to the fact that under the statutes of the state a lease for a term of less than seven years from the date of its making is valid against *bona fide* purchasers without actual

notice, the court ruled: "A like exemption from the operation of the recording acts necessarily attaches to that incorporeal interest denominated rent when severed from the reversion to which it is an incident."

We believe this ruling of the Massachusetts court is sound. The exemption of a lease of limited term from the necessity of registration necessarily includes within the exemption agreements with respect to rent for the term, in this state not exceeding three years. Since a written lease for not more than three years is valid without registration, an advance payment of rent for the term under such a lease would necessarily be valid as against a purchaser, without notice, of the estate of the lessor. And since the lease itself is not required to be registered, an assignment of the rent payable under the lease cannot be said to be within the policy or intent of the registration laws. The policy of the registration laws is thus fixed as excluding from their operation leases for a period not exceeding three years, and subordinate agreements affecting rents for such period.

While the lease involved in this suit was for a gross term in excess of three years, and therefore effective against the lessor's trustee in bankruptcy only after registration, the assignment of rent by the lessor covered only the period of one year. The contract of assignment was between the owner of the reversion and the assignee, the tenant having impliedly consented thereto by his execution of the twelve notes. The effect of the assignment was to deprive the lessor, and those claiming under him, of any further interest in the use or usufruct of the land for the period of one year. Its effect upon the record title and interest of the lessor under the lease was no greater than if, being in possession as owner of

the fee, he had leased the property for one year, collecting the year's rent in advance. Since such a lease is expressly excluded from the application of the registration laws, we think it necessarily follows that the assignment of rent for a single year is valid without registration." Stated differently, since a lease, operating to convey the record owner's right to the use and income of land for a period of not more than three years, is valid without registration, his assignment of rent or income for a similar period is likewise unaffected by the registration laws. The right to alienate the whole includes the right to alienate a part.

We conclude, therefore, that the lessor's assignment of rent for one year, to which he was entitled under the registered lease, was valid without registration; and that the assignment of error of the trustee in bankruptcy must be overruled.

Assignments of error of H. T. Kern, receiver, present the receiver's claim to the rent accruing between the date of his appointment, March 1, 1929, and the end of the rental year, a period of four months.

The record is wholly inadequate with respect to this phase of the case. The receiver was brought into the case as defendant to the cross-bill of the tenant, filed as a bill of interpleader, which averred that H. T. Kern was appointed receiver "to collect rents and care for said property" by the Chancery Court of Knox County "in the case of *Cumberland Trust Company* v. *Morris Bart and wife,*" and that, having qualified as such receiver, he demanded rent of the tenant from and after March 1, 1929. The receiver's answer to this cross-bill merely asserts his right to the rents and "reiterates his demand"

therefor, without stating any facts to support the demand or even disclosing the identity of the beneficiary of his receivership. The facts averred in the tenant's cross-bill were not admitted by the answer of the assignee bank, and it does not appear that either the assignee or the tenant was a party to the receivership proceeding.

The stipulation of facts, filed in lieu of proof, recites that the suit of Cumberland Trust Company against Morris Bart and wife was begun on or about March 1, 1929, and it was agreed that the record in that case "may be looked to for evidence of what has been done in said case, including the appointment of the receiver thereunder." But no part of that record has been made a part of the transcript on this appeal, and there is nothing in the record before us to show the basis or purpose of the receivership or the equities asserted by Cumberland Trust Company in that suit.

It is stipulated that Cumberland Trust Company was the creditor of Morris Bart, the lessor herein, to the extent of $168,125, secured by six deeds of trust on the property in question, all of which deeds of trust were executed after the execution and recording of the lease here involved. Five of these deeds of trust antedated the assignment of the rent notes to the bank.

The sale of the property to satisfy the vendor's lien, which was superior to the six deeds of trust, brought enough to satisfy the lien, but of the proceeds there remained only $22,000 to apply on the debt of Cumberland Trust Company, the balance of said debt being uncollectible by reason of the bankruptcy of the debtor.

The stipulation concludes with the recitation: "There has been no foreclosure proceedings instituted or pos-

session acquired under any of said trust deeds of Cumberland Trust Company.''

 The assignment of the rent notes to the appellee bank having been executed by the lessor subsequent to the registration of five of the six deeds of trust, securing the debt of Cumberland Trust Company, the latter's equitable right to have the rents prior to foreclosure applied to the satisfaction of its debt might have been shown to be superior to the rights of the assignee. *Henshaw* v. *Wells,* 28 Tenn. (9 Humph.), 568. It appears from that case and others cited,that, even before default, a mortgagee may invoke the powers of a court of equity to collect rents and income of mortgaged property, to be applied on the debt secured, upon showing that the debtor is insolvent, that the mortgaged lands will fall short of paying the debt secured, and that the rents and profits will be required for the purpose, unless there is some provision in the mortgage or deed of trust to the contrary. *Lingerfelt* v. *Gibson,* 161 Tenn., 477, 32 S. W. (2d), 1047; *Bank* v. *Ewing,* 80 Tenn. (12 Lea), 598; *Bramley* v. *Tyree,* 69 Tenn. (1 Lea), 531; *Brier Hill Collieries* v. *Gernt,* 131 Tenn., 542, 553, 175 S. W., 560.

 But this right to reach income or rents prior to default may be controlled by contract and stipulation of the parties. *Bank of Commerce* v. *Memphis,* 155 Tenn., 63, 290 S. W., 990; *Lieberman, etc.,* v. *Knight,* 153 Tenn., 268, 283 S. W., 450; *Morgan Bros.* v. *Dayton Coal & Iron Co.,* 134 Tenn., 228, 280, 183 S. W., 1019.

 The burden of establishing his right to the rents, as against the lessor's assignee, is clearly cast upon the receiver in this proceeding. *Moore* v. *Knight,* 74 Tenn. (6 Lea), 427. Under the authorities cited, this right must depend upon the terms of the deeds of trust

under which he claims, as well as upon the equities asserted in the proceeding in which the receivership was ordered. Since these essential facts are not shown in the record, his right does not appear, and we have no discretion but to affirm the decree of the chancellor, sustaining the claim of the assignee bank.

During the three months the trustee in bankruptcy was asserting claim to his bankrupt's equity in the reversion of the leased premises, the trustee paid the cost of furnishing heat, water, elevator service, and janitor service, which the tenant was entitled to receive from his landlord under the registered lease. The cost of this service was paid by the receiver from March 1st to the date of sale under the vendor's lien. It is assigned as error by both appellants that the chancellor should have required the tenant to reimburse them for the amount so paid.

As to these items we think the appellants were volunteers, not entitled to reimbursement. The tenant received no more than his contract entitled him to receive from the lessor, through whom appellants were then claiming the reversion as well as the rents, and the appellants, claiming the rights of the lessor, voluntarily assumed his burdens.

The decree of the chancellor is in all things affirmed. Costs of the appeal will be paid in equal parts by appellants.