Magnolia Petroleum Company v. State Bulding & Loan Association.

4-5601 132 S. W. 2d 837

Opinion delivered October 30, 1939.

Cockrill, Armistead & Rector, for appellant.
Bridges, Bridges & Young, for appellee.

Mehaffy, J. On August 15, 1928, Calvin Gibbs borrowed $11,000 from the State Building & Loan Association and to secure said loan executed and delivered to the appellee a mortgage on a filling station at Malvern, Arkansas. Gibbs remained in possession of the mortgaged property and received the rents and profits.

On November 1, 1933, Gibbs leased the filling station to the Magnolia Petroleum Company for a period of five years at a monthly rental of $65.

On November 16, 1933, Gibbs assigned the rental, payable under the lease, to the building and loan association for the purpose of applying the same upon his indebtedness to the association. The assignment recites that Gibbs does: "Hereby sell, assign and transfer unto the State Building & Loan Association, its successors and assigns, all rents which may hereafter become due upon the filling station." On the same day Gibbs wrote the Magnolia Company advising it that he had thus assigned the rents.

On November 21, 1933, the appellant and appellee entered into a memorandum whereby the association agreed that it would not disturb the lease agreement so long as the Magnolia paid the rental as set out in the lease to be paid to Calvin Gibbs.

On October 12, 1934, the Building & Loan Association filed its action in the chancery court of Hot Spring county for the foreclosure of the mortgage, but did not make the Magnolia Petroleum Company a party. The Magnolia Petroleum Company paid the rentals due under the lease to the building and loan association from the date of the assignment of such rentals to April 30, 1935. On that date, the lease was terminated by agreement between Gibbs and appellant.

The building and loan association wrote to the general manager of the Magnolia Company at Little Rock protesting against the cancellation of the lease by the lessor and lessee, and notifying the Magnolia Company that on May 16, 1935, application would be made for the appointment of a receiver to take charge of the filling station. Application was actually made for the appointment of a receiver on May 15th, and Mr. J. Elmo Young was made receiver. He took charge of the property and rented it for less than $65 a month.

Judgment was had against Gibbs, a decree of foreclosure and sale was had, and the building and loan association became the purchaser. The proceeds of the

sale, less expenses, were credited on the judgment, but this left a deficiency judgment.

On November 4, 1938, the building and loan association filed a complaint in the Hot Spring circuit court against the Magnolia Petroleum Company, not to recover rent, but to recover damages for breach of contract. The measure of damages claimed was the difference between the amount agreed to be paid, $65 per month, and the amount which was collected by the association.

The Magnolia Petroleum Company filed answer denying that it had breached its contract, and alleged that Gibbs, the lessor and owner of the reversion, had agreed upon the cancellation of the lease, and that thereafter no rents were due and payable.

The cause was submitted to the court sitting as a jury, and judgment was entered in favor of the plaintiff for the sum of $1,779.68. Motion for new trial was filed and overruled, and the case is here on appeal.

D. C. Bossinger testified in substance that he was the secretary of the State Building & Loan Association, and that the association, in 1928, loaned Calvin Gibbs $11,000 and that Gibbs was to pay $100 a month on the loan; that in 1933 the Magnolia Petroleum Company wanted to lease the station and wanted the association to agree that it would not foreclose during the life of the lease; the association refused to do this, but agreed that it would give a contract not to disturb the Magnolia Company in case they did foreclose. He knew about the lease at the time it was made, and insisted that all rentals due thereunder be assigned to the building and loan association; Gibbs executed an assignment of the rentals and wrote a letter to the Magnolia Company instructing them to pay the rents to the association. It was his understanding that the Magnolia Company would pay the rentals to the association, and after the assignment it did pay the association $65 per month. Gibbs agreed to pay the difference between the $65 and the amount he was to pay on the loan; he agreed to do this by paving taxes and insurance, but he did not do so. He would not pay anything on the balance, and the association had judgment against him and decided that it might as well begin

foreclosure. The suit to foreclose was filed October 12, 1934. He instructed his attorney not to make the Magnolia Company a party defendant, because the association had agreed that it would not disturb it. About May 1, 1935, witness received a letter from Mr. Kotch stating that appellant was not going to pay any more rent on the station. Witness told Mr. Kotch that he did not think they had a right to cancel the lease. Up to that time, the building & loan association had done nothing to interfere with the possession of the station. The Magnolia Petroleum Company gave witness notice that it was abandoning the station about May first. The property was in danger of depreciation and waste, and the association had a receiver appointed to take charge. Mr. J. Elmo Young was appointed receiver. The association had nothing to do with the station during the pendency of the foreclosure suit. The equity of the association has been sold for $3,500. At that time, Gibbs owed the association about $4,000. The Magnolia Company paid $65 a month from November 1, 1933, to May 1, 1935.

An itemized statement of the monthly payments was introduced; the sums of $35 shown on the statement were paid to the receiver; the association received them later. Witness does not know the name of the man with whom he talked, representing the Magnolia Company, but this man first held out that he would not lease it unless he got a contract that the association would not foreclose, and later agreed to compromise with the association that it would not disturb it during its lease; that was before Gibbs leased it; witness knew before the lease was made that the rentals were to be assigned to the association; does not think the foreclosure suit was pending when this instrument recognizing the assignment was executed. Later the association brought suit to foreclose but did not make the Magnolia Company a party. When asked what was going to happen when the association took the decree and somebody else bought the property, he answered that the association generally had to buy it itself.

Mr. J. Elmo Young testified that he was appointed receiver May 16, 1935, and took charge of the premises

at the time of his appointment; rented the property; collected the sum of $1,257.50 rent; rented the property for the best offer he could secure; by order of court deducted 10 per cent. for his services, and remitted balance to the association.

The lease was introduced in evidence, and the assignment to the association, and a letter by Mr. Bossinger to Mr. Cox. The following stipulation was introduced: ''That H. H. Marshall was the resident agent of the Magnolia at Malvern during the year 1933, and that he represented the Magnolia in negotiating the lease with Calvin Gibbs, which lease was signed on behalf of the Magnolia by one of its executives in the home office at Dallas, Texas; that H. H. Marshall died some two or three years ago.''

Gibbs was the mortgagor and had mortgaged the property including the filling station to the State Building & Loan Association; Gibbs remained in possession and was at the time the lease was executed, the owner of the property, subject, of course, to the mortgage.

Appellee argues that the instruments introduced, the lease and the assignment, do not bear the same date, but that a complete understanding was had before any of them went into effect. It is stated in appellee's brief that the sole question involved on this appeal is whether or not, after the entire future rental on a lease has been assigned and pledged by a lessor to secure a loan, and notice of the assignment given to and accepted by the lessee, that thereafter, without consent of the assignor, creditor, the assignor and lessee can by agreement between themselves alone, cancel the lease. It is argued that there is no provision for cancellation by any of the parties, and that it is elementary that when two or more parties enter into a contract, it cannot be rescinded, abrogated, modified or annulled by any of the parties, without the consent of all. Attention is called to the case of *Schmid* v. *Baum's Home of Flowers,* 162 Tenn. 439, 37 S. W. 2d 105, 75 A. L. R. 261. The facts in that case were wholly different from the facts in the instant case. In

that case, the tenant remained in possession, the owner went into bankruptcy, and the question arose whether the trustee in bankruptcy or the assignee of the rent note was entitled to the rent. The court among other things said: "The tenant was clearly entitled to retain possession of the leased premises as against the lessor's trustee in bankruptcy. He did retain possession, in full enjoyment of the privileges contracted for, and, therefore, no equities arose as between the tenant and his lessor. The tenant concedes his liability for the rent, and the question for determination is whether this rent is payable by the tenant to the holder of the notes or to the trusee and receiver."

The court also in the same case said: "The issue made by the trustee's appeal is, therefore, whether the creditors of the bankrupt are bound by his assignment of his right to receive the rent for the twelve months covered by the notes, the assignment having been executed for value, in good faith, and without fraudulent intent, more than four months before the institution of the bankruptcy proceedings."

In the instant case, the assignment was not executed for value, no consideration whatever was given, and the mortgagee already had the right to apply to a court of equity for a payment of rents to it. Moreover, the association's promise to not disturb the tenant if foreclosure proceedings were begun, meant nothing, because it could not know who would be the purchaser, and, of course, the foreclosure sale would terminate the tenant's right.

The case above referred to also decided whether a lease of the character involved in that suit should be recorded. Also the court stated: "Under the authorities cited, this right must depend upon the terms of the deed of trust under which he claims, as well as upon the equities asserted in the proceeding in which the receivership was ordered. Since these essential facts are not shown in the record, his right does not appear, and we have no discretion but to affirm the decree of the chancellor, sustaining the claim of the assignee bank."

It will be observed that the case cited and other cases relied on by appellee are cases where the assignment was made for value in good faith.

Appellee calls attention to the case of *Deming Investment Co.* v. *Bank of Judsonia,* 170 Ark. 65, 278 S. W. 634. The court said in that case: "An assignment of a rent note by the lessor to a *bona fide* purchaser for value before the transfer of the reversion by him operates as a severance of the rent from the reversion."

In the instant case there was no assignment for value. As we have already said, the appellee gave no consideration whatever for the assignment of the rent. It already had a mortgage on the entire property, the right to foreclose at any time, and the owner of the reversion had a right to assign the rent. Since the assignment was without consideration, the lessor and lessee had a right to cancel.

From the Deming Investment Company Case, *supra,* the appellee quotes as follows: "In such a case the owners of the land would have the absolute right to transfer the rent note, and the purchaser thereof in good faith would be the owner of the rents, and no subsequent sale could affect his rights. It is manifest that a subsequent sale would impair the obligations of his contract."

Of course, if the sale to a second party or the cancellation of the lease violated the obligations of a contract that Gibbs had with appellee, such action on the part of the lessor would be void. But there is no such reason in this case.

The appellee, in discussing points two and three discussed by appellant, says that these propositions are inherently wrong, and that it is ridiculous to assume that the association would enter into a contract giving up a very valuable right to the Magnolia Company if it got no benefit from it, or if its execution was not to bind other parties in any manner. Appellee does not mention what valuable right the association gave up to the Magnolia Company. It agreed that it would not disturb appellant if it foreclosed its mortgage, but it did not agree that appellant would not be disturbed if some third party purchased the property at the sale.

Learned counsel on each side argue a number of propositions and cite numerous authorities. We do not think it would serve any useful purpose to discuss the propositions discussed by counsel, or review all the authorities cited. Both parties seem to rely on the case of *Franzen* v. *Kinney Co.*, 218 Wis. 53, 259 N. W. 850, 105 A. L. R. 740. In that case there was not an assignment of rents, but an assignment of the lease itself, and the court in that case said: "But these decisions and statements must be considered in connection with the facts upon which they are based, and can be applied only to similar factual situations."

We do not think the authorities relied on are controlling here. In the instant case the lessor and lessee had a right to enter into the lease contract. They had the same right to cancel this contract, provided, of course, that it did not injure any other party. The appellee had a mortgage on the premises to secure the payment of a debt. While that mortgage existed, and before foreclosure, the mortgagor was the owner and had a right to the possession of the premises. The assignment made by the lessor to the mortgagee was without consideration and was taken, evidently, as additional security for its debt, and it thereby obtained, during the continuance of the lease, the rents and profits which it would not have been entitled to under its mortgage. Again, it actually foreclosed its mortgage, and upon its application, a receiver was appointed who immediately took charge of the property and collected the rents. We are of opinion that it had no right to sue for damages for a breach of the assignment.

The judgment is, therefore, reversed, and the cause dismissed.